JOHN. O'BRIEN LUMBER COMPANY, Respondent, vs. WILKINSON and another, Appellants.

*March 23—April 17, 1903.*

*Contracts: Logging: Duty to furnish cars: Pleading: Conclusions: Oral agreements varying written contract.*

1. In two contracts defendants agreed to cut timber on plaintiff's lands and to haul the logs and load them on the cars, it being stipulated that defaults or delays due to the railroad company should correspondingly extend the time for performance of the agreement. In a later contract, almost identical in other re-

spects, defendants agreed to deliver the loaded cars at a station some distance from the point of loading. *Held*, that it was defendant's duty to obtain the necessary cars. *Boyington v. Sweeney*, 77 Wis. 55, distinguished.

2. An allegation that under a certain written contract it became the duty of a party to do certain things, is merely a declaration of the pleader's construction of the instrument, and is of no force unless supported by the writing itself.

3. Prior or contemporaneous promises not embodied in a written contract are deemed to have been abandoned, unless it appears that the parties did not intend that the writing should express the whole contract.

APPEAL from an order of the circuit court for Ashland county: JAMES O'NEILL, Judge. *Affirmed.*

Appeal by defendants from order sustaining general demurrers to three counterclaims, each based on a separate logging contract, dated, respectively, May 2, 1898, February 6, 1899, and December 1, 1899. All three contracts were for logging operations by the defendants upon lands of the plaintiff, to be carried on by means of logging railroads extending from the tracks of the Washburn, Bayfield & Iron River Railway Company, and in all of which the defendants agreed to construct the roadbeds for any such spurs or logging railroads as should be needed for the prosecution of the work. The contracts of May 2, 1898, and February 6, 1899, required the defendants merely to cut and haul the timber and load it on the cars, while the contract of December 1, 1899, required them, in addition, to deliver the loaded cars at Port Wing Junction, a station on the main line of said railroad. By each contract it was provided, substantially, that in case of delay by the railroad company caused by strikes, or without fault of either party, the time for the performance of the contract should be thereupon extended, and the parties should not be responsible to each other for any damages resulting therefrom. All of the contracts required the defendants to properly load the logs, and reload any which fell off the cars within one mile from the place of loading, and also provided that

the defendants should be responsible for damages resulting from any injury to cars, engines, or equipment of the railroad caused by the negligence of the defendants. Upon these contracts, it was claimed by the defendants to have been the duty of the plaintiff to furnish the cars to enable the loading of the lumber at the rates specified in the several contracts; that it had, with full knowledge of the injurious effect upon the defendants, carelessly and negligently failed and neglected to furnish such cars in adequate quantity, with apt allegations of the extent of the deficiency in such supply, and damage thereby caused to the defendants by reason of the facts and conditions within the knowledge and contemplation of the plaintiff. The prayers of the counterclaims were for the recovery of such damages.

For the appellants there was a brief by *Tomkins & Tomkins,* attorneys, and *Hoyt, Doe, Umbreit & Olwell,* of counsel, and oral argument by *F. M. Hoyt.*

For the respondent there was a brief by *Richard Sleight,* attorney, and *Winkler, Flanders, Smith, Bottum & Vilas,* of counsel, and oral argument by *James G. Flanders.*

DODGE, J. The single question at issue upon this appeal is whether, under the logging contracts set forth, the plaintiff became obligated to furnish the cars on which to load the logs, so that failure to furnish them in quantities adequate for loading at the contract rate constituted breach of plaintiff's contractual duty. The general rule is that one who undertakes to accomplish a certain result, by necessary implication agrees to supply all means necessary to such result. *Savage v. Whitaker,* 15 Me. 24; *Godkin v. Monahan,* 83 Fed. 116; *Meekins v. Newberry,* 101 N. C. 17, 7 S. E. 655; *Currier v. B. & M. R. R.* 34 N. H. 498, 510. This general rule is subject to the qualification that, if any step toward such result is necessarily dependent upon the doing of any act or supplying of any facilities wholly under the control of the other .

party, the latter impliedly undertakes that such act shall be done or such facilities supplied, for otherwise he would occupy the absurd position of insisting that the contract absolutely bound one party to do that which the other could at will render impossible. *Manistee I. W. Co. v. Shores L. Co.* 92 Wis. 21, 28, 65 N. W. 863; *Churchward v. Reg.* L. R. (1865–66) 1 Q. B. 173, 195; *Black v. Woodrow,* 39 Md. 194; *Smith v. B. C. & M. R. R.* 36 N. H. 458. Under this general rule, it would seem pretty obvious that one undertaking to load logs upon railroad cars ordinarily assumes the duty of obtaining the cars on which to load the logs, as much as any other implements with which to do the work. Both are alike in the open market, as much at the command of one as another, and the obtaining of each is equally essential to the accomplishment of the result. Is there, then, anything apparent in the situation disclosed which indicates the understanding or assumption that the supply of cars was to be controlled by the plaintiff, so that it would be unreasonable or absurd to suppose that defendants had assumed to obtain them? It is suggested by appellants that since plaintiff was to decide where logs were to be transported, and to arrange with and pay the railway company therefor, it was in better position to secure good service. This may perhaps be true in some, but very slight, degree. The place to which the logs of a mill owner are going is usually almost matter of common knowledge in a lumbering region, and doubtless the destination of these logs was perfectly well understood at the time of contracting, so that defendants could assure the railway company of the extent of transportation with practical certainty. Neither would the fact that plaintiff was to pay the freight give it any considerable advantage over defendants in obtaining cars. The freight was an ascertained quantity, either by established tariffs or by general contract with mill owners, and was equally certain to be earned whether cars were supplied at the request of plaintiff or defendants. The railway

company was a common carrier, bound by law to render equal services and facilities to all similar applicants. We are unable to discover any such inequality between the opportunity enjoyed by plaintiff, and defendants as to bring the former within the qualification above stated. On the other hand, there are certain clauses in the contracts themselves which seem to indicate an understanding that defendants had assumed the duty of obtaining the cars. Most significant is the provision that defaults or delays due to the railroad company should correspondingly extend the time of performance of the logging and loading contract. Certainly, if plaintiff were bound to furnish the cars, any failure or delay therein, from whatever cause, would excuse failure of defendants in the matter of time of performance caused thereby, and the provision just mentioned would at best be meaningless. Its presence is, however, inconsistent with existence of any understanding in the minds of the contracting parties that plaintiff was to furnish cars. Had such understanding existed, the contract would have provided for extension of defendants' time in case of any breach of that duty, whether due to the railway company or any other cause, if, indeed, the parties thought necessary to expressly provide for the results of such breach. The presence of the clause mentioned indicates that the parties understood that without it defendants would not be excused for delay in delivery of logs, though caused by shortage of cars.

What has been said up to this point is based wholly on the first and second contracts, under which defendants' duty extended only to loading the logs on the cars. Under the December 1, 1899, contract, which required them to deliver the car loads of logs at a station some distance from the point of loading, the implication of a duty to obtain the cars necessary to accomplish that result seems to us so irresistible as not to require or warrant argument. The making of that contract, under which defendants are so plainly bound to obtain neces-

sary cars, is a very cogent instance of practical construction of the prior contracts; for, with the one exception of requiring delivery at Port Wing Junction, the other obligations of both parties are declared in language almost identical with that used in those former instruments. It is quite inconceivable that parties who had understood that the important duty and risk of obtaining the necessary cars was, by implication, cast on the plaintiff in the earlier contracts, should use substantially the same form of writing when they intended that it should be cast on the other.

Appellants largely rest their contention upon *Boyington v. Sweeney,* 77 Wis. 55, 45 N. W. 938, which, it must be confessed, presents at least enough apparent similarity to challenge consideration. There Sweeney contracted to cut and sell his own logs to Boyington, making delivery by loading on cars at specified side track, "as ordered by" Boyington, and to furnish crew enough to load forty cars, and more if practicable, per day. There was much evidence of the situation, showing necessity that Boyington should be able to regulate rate of delivery, and also understanding that he had already provided by contract with the railway company for supply of cars on his order. The court held, independently of this evidence, however, that the writing, upon its face, by implication imposed that duty on the purchaser. That conclusion rested upon two considerations: first, that there was an implied duty upon Boyington to accept and receive the purchased logs at the place of delivery, which indicated that the receptacle of delivery, namely, the car, was treated by the parties as his; but more especially the implication was derived from the phrase "as ordered" by him, which was held to express the understanding of both parties that the supply of cars for the purpose of receiving the logs was placed within the regulation and control of the buyer; such construction being strengthened by the specification of Sweeney's obligation to furnish sufficient crew. On such construction of that

clause, the situation was brought within the qualification to the general rule of law above stated, and was materially distinguished from that under consideration here.

For the reasons stated, we cannot avoid the conclusion that the written contracts, upon their face, by necessary implication imposed on appellants the duty of obtaining the cars upon which they had agreed to load the logs, and therefore fail to support any cause of action against respondent.

Appellants, however, press upon our attention an allegation in each counterclaim to the effect "that under such contract it became and was the duty of the plaintiff, and at and prior to the making of said contract the plaintiff promised and agreed," that it would supply cars, etc. This allegation cannot change the situation. The assertion of plaintiff's duty under the written contract is, of course, only a declaration of the pleader's construction, and of no force unless supported by the writing itself. The fact that, at and prior to the making of the written contract, plaintiff promised to furnish cars, can be of no force, unless that contract can be held not an attempt to reduce to writing the whole agreement between the parties. If it was such an attempt, and so intended, all contemporaneous or prior promises not embodied therein are deemed to have been abandoned. *Herbst v. Lowe,* 65 Wis. 316, 320, 26 N. W. 751; *Godkin v. Monahan,* 83 Fed. 116. It is not enough for the admission of extrinsic agreements that the writing fails to express the whole contract which the parties made. On the contrary, it must be apparent that they did not intend so to do. The typical case is where the obligation of only one of the parties is written, as in a promissory note or a promise to convey property. *Brader v. Brader,* 110 Wis. 423, 432, 85 N. W. 681. No one can read either of the elaborate documents sued on, setting forth, as they do, obligations assumed by each of the parties with great detail and exactness, and being signed by both, without being convinced that the effort and intention were to place within the four

corners of the writing all that needed to be expressed in order
to declare all the subjects upon which the minds of the con-
tracting parties had met—to cover the whole contractual field.
*Hei v. Heller,* 53 Wis. 415, 10 N. W. 620; *Cliver v. Heil,* 95
Wis. 364, 70 N. W. 346.

*By the Court.*—Order affirmed.