Dieck, Respondent, vs. Oconto Company, Appellant.

*November 16, 1920—January 11, 1921.*

*Logs and logging: Construction of contract: Proof of custom: As to sorting logs: As to furnishing cars: Time of custom: Special presumption: Verdict: Method of computation not manifest: Accord and satisfaction: Question for jury.*

1. In a contract to cut, log, and deliver timber on cars as directed by the owner, the provision relative to direction by the owner authorized him to direct details with reference to the prosecution of the work, but did not authorize him to require the sorting of the timber, which work was reasonably worth several thousand dollars.

2. Custom cannot be proved to modify or contradict the terms of a written agreement (*Clarke v. Maisch,* 171 Wis. 225, followed); but where the terms of the contract were ambiguous, evidence as to custom or usage was admissible in order to determine whether the logger was required to sort logs, where it was not expressly stated in the contract.

3. In an action to recover the value of extra services rendered in connection with the contract, where there was no express provision as to sorting the logs and the evidence showed a custom that such work was not required unless specified, it was proper to submit to the jury the question whether the contract required plaintiff to sort the logs.

4. To render evidence of a custom admissible to aid in construing an ambiguous contract it must be shown that the custom existed prior to the making of the contract; and a custom originating subsequent thereto cannot be considered in construing it.

5. Error in admitting proof of a custom in the logging industry in the year subsequent to the execution of the contract does not require a reversal, since the court can indulge the special presumption that the custom was not of recent origin but was coincident with the growth of the industry, in which similar contracts were common.

6. A logging contract requiring the contractor to deliver on cars, without specifying who should furnish the cars, is so ambiguous as to render admissible evidence of a custom of the owner of the logs to furnish them, though in the absence of evidence of such custom the contract will be construed to require the contractor to furnish the cars. *John O'Brien L. Co. v. Wilkinson*, 117 Wis. 468, distinguished.

7. Where the evidence showed that the contractor did not sort all of the logs cut, a finding by the jury as to the quantity he did sort, which was apparently an honest endeavor by them to determine a question peculiarly for their consideration, will not be disturbed on appeal, though the method by which they arrived at their verdict was not manifest.

8. Where defendant's testimony strongly tended to show a complete settlement and an accord and satisfaction between the parties, but the plaintiff denied that the settlement included the items in controversy, the question whether these items were settled was clearly a jury question.

APPEAL from a judgment of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge. *Reversed.*

The defendant owns and operates a sawmill and wholesale lumber yard at Oconto, Wisconsin, and is the owner of a large quantity of standing timber in Oconto and Forest counties. Its mill at Oconto is supplied largely from this timber, some of which is cut and logged by the defendant itself, while other parts of it are logged under contract with third parties, which are known as jobbing contracts.

On September 9, 1912, the *Oconto Company*, the defendant, entered into one of these contracts with Glynn & Bryce, a copartnership composed of George Glynn and and John Bryce. The contract was in writing and, so far as material here, provided that

"for and in consideration of the payments hereinafter to be made by parties of the first part, the parties of the second part agree to cut, log, and deliver on cars all of the timber, cedar, and hard wood, ties, posts, poles, pulp wood, and bark on the following lands, as directed by the party of the first part. [Here follows a description of the land and a schedule of the prices to be paid.] Each logging year shall commence on September 1st and shall terminate the following May 1st, unless otherwise directed by the party of the first part. Parties of the second part agree to cut and remove timber and products from sections or parts of sections located in above described towns and ranges as directed by party of first part, and to log and deliver on cars not less than four million feet nor more than five million feet during each logging season."

Glynn & Bryce logged under this contract during the season of 1912 and 1913. The contract was assigned by Glynn & Bryce to *Herman Dieck,* the plaintiff, September 12, 1913, with the consent and approval of the defendant. *Dieck* started logging under the terms of the contract in the fall of 1913 and operated thereunder during four successive logging seasons, completing the contract during the logging season of 1916 and 1917. Settlements were made between the parties at the end of each logging season, by which *Dieck* was paid in full for all timber logged and placed on cars, at the schedule of prices provided for in the contract.

This action was brought by *Dieck* to recover for extra services rendered by him in sorting the logs, which he claims he was not required to do by the terms of the contract, and for extra labor which he was obliged to perform in decking the logs at the landing (railway track) because of the failure of the defendant to furnish cars in sufficient numbers to enable him to load the logs directly on the cars. It is the

claim of the defendant that the contract by its terms required *Dieck* to sort the logs and furnish the cars, and that, consequently, it is not liable for the extra labor and services so performed.

The case was tried before a jury and a special verdict consisting of twenty-one questions and answers returned. Among other things it was found that during the years 1913 to 1917 there was a general as well as a local custom in Oconto and adjoining counties that a contract providing for logging and placing the logs on cars was fulfilled, in the absence of cars, by decking the logs at the landing (railway track) ; that these customs were known to the *Oconto Company* and *Herman Dieck* at the time the latter took the assignment of said contract from Glynn & Bryce, and that when the Glynn & Bryce contract was assigned to *Herman Dieck* the *Oconto Company* and *Dieck* contracted with reference to and in conformity with said custom; that during the years 1913 to 1917 there was a general as well as a local custom in Oconto and adjoining counties among lumber companies and jobbers that the sorting of logs was not required unless expressly stated in the contract, which custom was known to the *Oconto Company* and *Herman Dieck* at the time the written contract was assigned to *Dieck,* and that when the contract was assigned the *Oconto Company* and *Herman Dieck* contracted with reference to and in conformity with said custom, and that the contract did not require *Dieck* to sort the logs; that during the term of the contract *Dieck* sorted 3,416,946 feet of logs, the reasonable value of which was one dollar per thousand; that during the term of the contract *Dieck* decked, on the landing, 1,785,199 feet of logs, which were thereafter loaded on cars; that the reasonable value of decking said logs on the landing was sixty-five cents per thousand, and of loading them on cars after they had been so decked, eighty-five cents per thousand.

Upon motions made after verdict the court changed the answer of the jury to the sixteenth question by which it was

found that the number of feet of sawlogs which *Herman Dieck* sorted during the term of the contract was 3,416,946 feet, to 8,991,129 feet, and ordered judgment for the plaintiff upon the special verdict as so amended. Pursuant thereto, judgment was entered in favor of the plaintiff for $12,457.81, damages and costs. From the judgment so entered the defendant brings this appeal.

For the appellant there was a brief by *Classon & Whitcomb,* attorneys, and *Allan V. Classon,* of counsel, all of Oconto; and the cause was argued orally by *Allan V. Classon* and by *E. M. Smart* of Milwaukee.

For the respondent there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *A. S. Larson.*

OWEN, J. Evidence offered by the plaintiff was admitted to prove oral conversations occurring between the plaintiff and the defendant prior to the time of the assignment of the contract by Glynn & Bryce to *Herman Dieck,* which plaintiff contends amounted to a contract on the part of the *Oconto Company* to furnish the cars for the loading of the logs. This evidence was objected to by the defendant, and its reception is assigned as error, because the original contract between the defendant and Glynn & Bryce is "an agreement that by its terms is not to be performed within one year from the making thereof," which by sec. 2307, Stats., is required to be in writing, and such a contract cannot be modified by parol agreement. The circuit court held that it did not appear upon the face of the contract that it was not to be performed within one year from the making thereof, consequently it was not within the statute of frauds and was a contract which might have been modified by an agreement resting in parol. In the view we take of the case it will be unnecessary to review the ruling of the court in this particular or to consider other theories advanced to justify the reception of this evidence, and hence we pass this feature of the case without further notice.

Two principal questions are involved: one, whether the contract required the logger or jobber to sort the logs; and the other, whether it was the duty of the company or the jobber to furnish the cars. The answer to both questions depends upon a construction of the following paragraph of the contract:

"Witnesseth, that for and in consideration of the payments hereinafter to be made by the parties of the first part the parties of the second part agree to cut, log, and deliver on cars all of the timber, cedar, and hard wood, ties, posts, poles, pulp wood, and bark on the following lands as directed by the party of the first part."

We discover nothing in other parts of the contract which throws any light upon the question of whether the undertaking of the jobbers to "cut, log, and deliver on cars" included the duty of sorting the logs, or upon the question of whether cars were to be furnished by the jobber or the company. Nowhere is the question of sorting expressly mentioned in the contract, and whether the undertaking to "cut, log, and deliver on cars" imposed upon the contractor or jobber any duty with respect to the sorting of the logs is certainly a matter of much doubt.

On the part of the appellant it is argued that the phrase "as directed by the party of the first part" placed the entire operations under the supervision and direction of the company, and that by virtue of that provision of the contract it was within the authority of the company to require a sorting of the logs, and that in order for the jobber to "cut, log, and deliver on cars as directed by the party of the first part" it was necessary for the jobber to sort the logs if so directed by the company. It is apparent that by the phrase "as directed by the party of the first part" the company retained a certain supervision and direction over the logging operations, but just how far that extended is not easy of determination. Manifestly it could direct which tracts of timber were to be logged first, and probably many other details with refer-

ence to the prosecution of the work; but we are not disposed to hold that the company, by virtue of the phrase under consideration, could impose requirements upon the contractor for extra labor and services on his part running into thousands of dollars. This does not seem reasonable. It is well known that men who undertake the performance of contracts must understand with some definiteness the amount of work they are required to do, and that people of ordinary intelligence will not enter into contracts by the terms of which extra work may be imposed upon them over which they have no control, of the amount of which they can form no estimate, leaving it within the power of the other party to convert a profitable into a ruinous contract. Neither is it profitable for the owner to ask a contractor to figure on work of such an indefinite character that to protect himself from loss the contractor must take into consideration and figure on contingencies which may never be met and for the performance of work which may never be required of him.

In this case *Dieck*, at the request of the defendant, rendered services in the matter of sorting logs which the jury estimated to be of the value of $3,416 and which the court valued at $8,991. It is not reasonable to suppose that any intelligent person would enter into a contract where extra labor and services to any such an amount could be required of him at the discretion of the other party. We therefore hold that whatever be the extent of the authority reserved to the company by the use of the phrase in question, it did not vest the company with discretion to require *Dieck* to sort the logs in the manner he was directed to sort them and in which he did sort them. If such duty rested upon him at all, it arose from the contract, and did not rest in the discretion of the company.

The court submitted to the jury the question whether there was a general and local custom with reference to the sorting of logs where it was not expressly stated in the

contract. The jury found that such general and local custom existed, and that according to such custom, both general and local, sorting was not required unless expressly stated in the contract. The appellant claims this was error on the part of the court, and relies upon the proposition that custom cannot be proved to modify or contradict the terms of a written agreement. This principle has been recently declared by this court. *Clarke v. Maisch,* 171 Wis. 225, 177 N. W. 11. In that case it was also stated that proof of custom and usage is permissible "to define what is ambiguous or is left indeterminate in a contract, where both parties have knowledge of the custom or are so situated that such knowledge may be presumed." We think the situation here presented affords a peculiarly proper case for resorting to proof of custom or usage in order to determine whether the terms employed in this contract bound the logger to sort the logs as he did pursuant to the direction of the defendant. Such proof does not contradict the terms of the written agreement, but assists in the construction of its ambiguous terms. Upon evidence, the sufficiency of which is not challenged by the appellant, the jury found that by such usage and custom the logger was not required to sort the logs unless it was so expressly stated in the contract. In response to an appropriate question it was further found that the contract under consideration did not require the logger to sort the logs. Under the circumstances, this was a proper question to submit to the jury. *French v. Fidelity & C. Co.* 135 Wis. 259, 269, 115 N. W. 869. These considerations lead to the conclusion that the plaintiff was not required to sort the logs in the manner he did sort them pursuant to the directions of the defendant.

We have been somewhat disturbed by the fact that the proof, and the finding of the jury, with reference to the customs proven related to the time "during the years 1913 to 1917." Now the custom which may be proven as entering into and forming a part of a contract must be a custom

existing at the time the contract is made. This contract was made in 1912. There is no proof here of any existing custom duing the year 1912. Plainly, the custom during the years 1913 to 1917 was immaterial. In order to affect this contract it must have been a custom existing at the time the contract itself was made. A custom arising subsequent to the making of a contract cannot be considered in construing the contract or in determining the intent of the parties as expressed in the language used. However, we do not feel that a new trial should result for this reason. There is no reason to believe that the custom found by the jury suddenly came into existence within a year after this contract was made. Logging operations have been carried on in Northern Wisconsin for many years, during which time contracts such as this have been common. The custom or usage we are discussing was no doubt a growth or development coincident with that of the timber industry and had become recognized in 1912 as well as in 1913. We think that justice will be done, and the circumstances justify us, in indulging the presumption that the customs which were proven to have existed "during the years 1913 to 1917" also existed at the time the contract was made. This should not be construed as countenancing a departure from the general rule that a custom which may be considered as an aid in the construction of a contract must be a custom existing at the time the contract is made. The presumption here indulged is a special presumption which we feel is warranted by general knowledge of the lumber industry, and in the belief that by its indulgence justice will be promoted and this litigation, burdensome to both parties, be terminated.

The next troublesome question is whether by the terms of the contract the plaintiff or the defendant was required to furnish the cars upon which the logs were to be loaded. With reference to this matter the contract is also silent. Appellant contends that the contract is not ambiguous in this particular because it has been held by this court as a

Dieck v. Oconto Co. 173 Wis. 156.

matter of law that such a contract requires the one who undertakes to place logs upon the cars to provide the cars necessary to receive the logs, and cites the case of *John O'Brien L. Co. v. Wilkinson*, 117 Wis. 468, 94 N. W. 337. We can see little difference between the contracts there involved and the one here under consideration. In that case the contracts required the defendant to cut the logs from plaintiff's land and deliver them on board cars. The question involved was whether the plaintiff or the defendant was required to furnish the cars. The court refers to the general rule "that one undertaking to load logs upon railroad cars ordinarily assumes the duty of obtaining the cars on which to load the logs, as much as any other implements with which to do the work." That case was before the court on demurrer, and no custom or usage to the effect that under such circumstances it was the duty of the owner of the logs to furnish the cars was alleged. The court was obliged to determine from the bare terms of the contracts upon whom was devolved the duty of furnishing the cars, and by the application of the rule stated it was determined that it was the duty of him who undertook to load the logs on the cars to furnish the cars necessary to accomplish the result. Here, however, we have proof of a general and local custom and a finding of the jury that such general and local custom required the owner of the logs to furnish the cars. This circumstance distinguishes this case from *John O'Brien L. Co. v. Wilkinson, supra.*

Somewhat the same question was involved in *Vogt v. Schienebeck,* 122 Wis. 491, 100 N. W. 820. In that case the owner of lumber contracted to sell it to the plaintiff and deliver free on board cars at Butternut. There the relation of vendor and vendee existed, and, while it was held that it was the duty of the seller to furnish the cars, it was stated in effect that proof of a general custom so well established as to become a part of the contract might impose the duty upon the other party. That is a statement of the law

which we deem applicable to the situation here. The parties here are not vendor and purchaser. Where that relation exists the law is plain, we think, that it is the duty of the vendor to procure the cars upon which to load the product which he has sold and agreed to furnish f. o. b. cars. Where, however, the relation between the parties is not that of vendor and vendee, the law in that respect is not so well settled; and while the conclusion reached in *John O'Brien L. Co. v. Wilkinson, supra,* was probably inevitable where the duty must be determined from the bare terms of the contract, nevertheless it is not so well settled that proof of a general custom known to the parties at the time of making the contract, and with reference to which they were presumably contracting, cannot be shown, because in so doing it varies the terms of a written contract. If such proof was proper in the *Vogt Case,* it is much more appropriate here. We hold that, notwithstanding the ruling in *John O'Brien L. Co. v. Wilkinson, supra,* contracts of this nature are sufficiently ambiguous to justify proof of a custom such as was here proven, in order to place the court in the position of the parties at the time the contract was made and to enable it to properly construe the language used in the contract. The jury having found that by the general and local custom with reference to such contracts it was the duty of the defendant to provide the cars, the contract must be so construed. Here, too, the custom proven related to the time "during the years 1913 to 1917." The presumption indulged with reference to the custom previously discussed will be applied here, to prevent a new trial.

The jury found that by reason of the failure of the defendant to seasonably furnish sufficient cars plaintiff was required to deck at the landing 1,785,199 feet of logs. The finding of the jury in this respect is not seriously challenged by either party, and it must stand. The jury found that the plaintiff, during the term of his contract, sorted 3,416,946 feet of logs. The court changed this to 8,999,129 feet,

which was the entire amount logged by *Dieck* during the
term of the contract. Appellant claims this was error. The
court acted upon the theory that *Dieck* sorted all of the logs
cut. We are persuaded that the difference arising between
court and jury with reference to this matter arose because of
a difference in understanding as to what constituted a sort-
ing under the testimony with reference to custom. The in-
structions given to *Dieck* with reference to sorting was to
"cut, skid, and deck together, the white pine, hemlock, and
tamarack. The maple and birch can be skidded and decked
together. The elm and basswood, as well as the cedar, will
each be decked separately." It thus will be seen that the soft
wood was only to be sorted from the hard wood. The pine,
hemlock, and tamarack were not to be sorted from each
other. The maple and birch were to be decked and skidded
together. The elm and basswood and the cedar were to be
separated and decked separately. Each kind of timber was
not to be separated from every other kind of timber and
decked by itself. The pine, hemlock, and tamarack were to
be sorted only from the other kinds of timber, and this was
true of the birch and maple. In one sense of the word this
might have constituted sorting of all the timber, but the jury
had a right to find that it was not the kind of sorting which
constituted extra labor or services of the value of one dollar
per thousand.

Theodore Van Rossum, one of plaintiff's witnesses, who
gave rather straightforward testimony concerning the cus-
tom in this respect, stated that under a contract such as this
he would expect to sort the soft from the hardwood timber
without extra compensation. That *Dieck* did not claim com-
pensation for sorting all of the logs is indicated by his com-
plaint, wherein he claims compensation for sorting 7,810,000
feet of logs only, and by his testimony, from which it
plainly appears that he did not put in a claim for sorting all
of the logs. He said: "I still claim that I am entitled to
one dollar per thousand for sorting all of the *larger* timber

cut during the four years from the *Oconto Company*."
Upon his cross-examination under sec. 4096, Stats., he was
asked this question: "You knew during the spring of 1914–
1915 that you would have to sort the logs before you
began cutting? *A.* Yes, sir. *Q.* Did you sort them?
*A.* Sorted some of them, some I did not." And again he tes-
tified: "I didn't put in a claim for all of them because some
of them I didn't, like cedar and that stuff, I didn't figure
that that way—different timber; I did not have to sort that."
Besides this, there is testimony to the effect that a few car-
loads of mixed and unsorted timber were shipped to the
company's mill at Oconto, from all of which it appears
plainly that plaintiff is not entitled to compensation for sort-
ing all of the timber cut.

It is not very plain how the jury arrived at the amount of
timber sorted. However, we think that the evidence was
susceptible of various views concerning what constituted
sorting under the custom or usage proven, and that it was
peculiarly a question for the jury first to ascertain what
sorting was required by the express terms of the contract
and then to ascertain the sorting which was done by the
plaintiff over and above the sorting required by the terms
of the contract, thereby arriving at the amount sorted by the
plaintiff, for which he was entitled to the compensation of
one dollar per thousand fixed by the jury. It is not surpris-
ing that one finds difficulty, from a review of the record, in
determining how the jury arrived at the amount of logs
which it found to have been sorted. We do believe, how-
ever, that the jury made a conscientious and painstaking
effort to arrive at a correct conclusion, and as it was pecul-
iarly a jury question we see no reason for disturbing its
verdict in this respect. At any rate it is clear to us that the
plaintiff is not entitled to pay for sorting the entire cut.
We think judgment should have been rendered upon the
verdict of the jury.

It is further claimed on the part of the appellant that there

was a complete and final settlement between it and the plaintiff ·in the springs of 1914, 1915, and 1916, and a complete settlement, accord, and satisfaction between these parties in the spring of 1917. It may be conceded that defendant's testimony strongly tends to show these facts. However, the testimony of the plaintiff is in flat denial of a settlement of the items here involved, and the question of whether or not there was a settlement of the matters involved in this litigation was clearly a jury question, which was found against the defendant and cannot be disturbed.

*By the Court.*—Judgment reversed, and the cause remanded with instructions to reinstate the answer of the jury to the sixteenth question of the special verdict and to render judgment upon such verdict as returned by the jury.