Dunn & Stringer Investment Company, Appellant, vs. Schaefer, Respondent.

*October 10—November 9, 1932.*

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Victor D. Werner* of counsel, all of Milwaukee, and oral argument by *Mr. Werner.*

*Geo. J. Graebner* of Milwaukee, for the respondent.

Owen, J.  The plaintiff, Dunn & Stringer Investment Company, is a loan broker, duly licensed to transact its busi-

ness in Wisconsin. On the 21st day of September, 1926, the defendant Arthur W. Schaefer contemplated the construction of a twelve-family apartment house upon property owned by him in Milwaukee. In order to enable him to complete the undertaking it was necessary for him to procure a loan upon the premises. Upon that day he applied to the plaintiff for a loan in the sum of $37,000, in and by such application agreeing to pay the plaintiff a commission of two per centum therefor. At the same time the plaintiff caused the defendant to sign an application for such loan addressed to the Prudential Insurance Company. Neither application expressed the time or the date when the loan was desired or intended to be available.

According to the defendant's contention it was orally agreed between him and the plaintiff's agent, at or about the time the applications were signed, that the loan would be available as soon as the building was plastered. The plastering of the building was completed sometime between the 15th of March and the 1st of April. The defendant's resources were exhausted at that time, and on the 13th day of April he called upon the plaintiff to inquire whether a portion of the proceeds of the loan was available, in view of the fact that the plastering of the building had been completed. He was then informed by plaintiff's manager that no part of the proceeds of the loan would be available until the building was completed and fifty per centum of the space rented.

It appears that up to this time the plaintiff had not forwarded the defendant's application for the loan to the Prudential Life Insurance Company, owing to the fact that, under the rules of the insurance company, an application for a loan on a building under construction would not be considered until the building was so far completed that the character of the construction thereof could be judged, and a photograph showing its general appearance could be taken.

It appears that at the interview on April 13th there was talk between the defendant and plaintiff's manager concerning his then necessities for money, and it was suggested that a temporary loan might be obtained, and that, if the defendant would send his complaining contractors to plaintiff's manager, he would explain to them the situation and give assurance that the proceeds of the loan would be available upon the completion of the building, and it appears that the defendant did send some of his contractors to the plaintiff for such assurance.

On the 13th day of April the defendant left with the plaintiff the abstracts of title to his premises, and also made out and delivered to the plaintiff a financial statement. Thereafter the plaintiff caused an appraisal of the premises to be made, and a photograph of the building prepared, in accordance with the requirements of the insurance company, and on the 16th day of April mailed the application for the loan to the Prudential Insurance Company.

On the 19th day of April the plaintiff received a telegram from the insurance company indicating its approval and acceptance of the loan, of which fact the plaintiff promptly notified the defendant. The defendant made no response to plaintiff's letter notifying him that the loan had been approved by the Prudential Insurance Company and that the money would be available to the defendant when the building was completed and fifty per centum of the space rented.

There was no further communication between the plaintiff and the defendant until the 20th day of June, when the defendant telephoned to the plaintiff, saying that he canceled his application for the loan, as he had found another place where the loan could be procured without the payment of a commission. During this conversation he expressed to the plaintiff his willingness to pay the expense which had been incurred by the plaintiff in connection with the application

for a loan up to such time. The plaintiff informed the defendant that it had earned its commission, and that it would expect not only the expense it had incurred but the commission which it had earned.

It also appears that sometime in March the plaintiff had procured the issuance of a fire insurance policy upon the building then under construction, although there is a dispute between the parties as to whether this was done at the request of the defendant. At any rate, the plaintiff procured the issuance of such insurance and paid the premium thereon. When the defendant made application to the First Wisconsin Trust Company, from which he eventually procured the loan, he represented that there was $20,000 insurance on the building.

The defense to the action was that the original contract contemplated the furnishing of a portion of the money or the proceeds of the loan when the plastering was completed, and that the plaintiff breached this contract or failed to perform the same within the time required to entitle it to the commission. The question was submitted to the jury in the form of a special verdict, in which the jury found that at the time of making the application for the loan it was agreed by the plaintiff that some of the money was to be available at the completion of the plastering of the building, and that there was no subsequent modification of this contract whereby the loan was to be available at the time the building was completed and fifty per centum rented.

The trial court admitted parol evidence to show that at the time the written applications were made there was an oral agreement between the parties that a portion of the loan would be available to the defendant when the plastering was completed. This on the theory that the time when the loan would be available to the defendant was, obviously, a very material consideration which was not covered by the written terms of the contract. The parol evidence was admitted to

complete the contract, not for the purpose of contradicting the terms of the writing. The propriety of the admission of this parol testimony is challenged.

The law is pretty well settled that where it appears from the writings themselves that the whole agreement is not stated therein, and that the writings are incomplete to express the entire agreement, parol evidence may be received to supply that portion of the agreement not covered by the writings. *Hei v. Heller,* 53 Wis. 415, 10 N. W. 620; *Cliver v. Heil,* 95 Wis. 364, 70 N. W. 346; *John O'Brien Lumber Co. v. Wilkinson,* 117 Wis. 468, 94 N. W. 337; *Coyne v. Coyne,* 199 Wis. 263, 225 N. W. 138, 935. Whether that principle justified the admission of parol evidence in this case, we shall not here determine. It is a principle generally applied where it is apparent that the writings were not intended to embody the entire agreement, as in the case of a promissory note, or a promise to convey property. A unilateral agreement affords a typical case for the application of this doctrine. It was said by Mr. Justice DODGE in *O'Brien Lumber Co. v. Wilkinson,* 117 Wis. 468, 474, 94 N. W. 337: "It is not enough for the admission of extrinsic agreements that the writing fails to express the whole contract which the parties made. On the contrary, it must be apparent that they did not intend so to do." While the propriety of the admission of parol testimony to prove the agreement that a portion of the proceeds of the loan was to be available to the defendant at the time the building was plastered is involved in some doubt, we give the matter no further consideration, as we consider that the conduct of the defendant subsequent to the time when, under his contention, he was entitled to a portion of the proceeds of the loan, establishes his liability upon this contract, even though the terms of the contract be as claimed by him.

When defendant called upon the plaintiff on the 13th day of April he was informed that the loan was not yet available,

and that it could not be made available until the building was completed and fifty per centum thereof rented. Although he claims this was news to him, and amounted to a failure on the part of the defendant to perform its contract, he said nothing at the time about cancellation of the application, but, on the contrary, left with the plaintiff a statement of his financial condition and delivered to it the abstracts on the property. He fully understood that the plaintiff would proceed to procure the loan so that it would be available upon the completion and partial renting of the building, to which he gave his tacit acquiescence and permitted the plaintiff to incur further expense and render additional services in and about the procurement of the loan. If he did not desire the plaintiff to proceed with its negotiations, it was his duty then and there to cancel the application for the loan. He was then advised that there was a misunderstanding between him and the plaintiff concerning the real terms of the agreement. He then knew that the plaintiff could not furnish the loan until the building was completed. He also knew that the plaintiff intended to proceed in its efforts to procure the loan. If the failure of the plaintiff to procure the loan so that a portion of it would be available to the defendant when the plastering was completed, constituted a breach of the original contract, that breach was plainly waived by the defendant's subsequent conduct. If it did not constitute a breach, the defendant acquiesced in the plaintiff's construction of the contract, and tacitly consented to its further efforts in the procurement of the loan. We see no theory upon which the defendant can, either in morals or law, avoid the payment of the commission which he expressly agreed to pay in and by the terms of the contract of employment.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in favor of the plaintiff and against the defendant for the sum of $874.40, with interest from the date of the commencement of the action.