Argued November 30; reversed December 20, 1932

# GREEN MOUNTAIN LOG CO. *v.* COLUMBIA & NEHALEM RIVER RAILROAD

(16 P. (2d) 1106)

*Arthur M. Geary,* of Portland, and *Hugh Mont-gomery,* of San Francisco, Cal., for appellant.

*Harry B. Beckett,* of Portland (R. K. Powell, of Portland, on the brief), for respondent.

BELT, J. This is in the nature of an action for money had and received to recover certain alleged overcharges made by the defendant railroad company on shipments of logs by plaintiff which was engaged in logging operations in the lower Columbia river basin. The shipments were made between February 28, 1924, and June 1, 1925, and moved under tariff rate published by defendant railroad requiring the shipper to pay $3.25 per thousand feet of logs transported, "based on Spaulding scale." Plaintiff asserts that the railroad company erroneously applied the tariff rate to these shipments and seeks to recover the difference between what it paid and what the charge should have been under proper interpretation of the rate as published.

Both parties agree that the tariff is uncertain and indefinite in that it does not specify the deductions to be made in scaling logs to determine freight charges under the Spaulding scale or rule. The controversy hinges on what is the customary and usual method of scaling logs for freight charge purposes.

Plaintiff contends that the bills rendered should have been computed by using the Spaulding scale as a base in the customary and usual way as applied on the Columbia river, i. e., in the scaling of the logs such deductions should have been made as to charge for only merchantable portions of the logs shipped. Otherwise stated, the plaintiff asserts that, in scaling logs for freight rate purposes, it is entitled to the same method of scaling as ordinarily used between buyer and seller.

The railroad company contends that, at the time of the shipments in question, and for many years prior thereto, it was the general custom and usage of rail-

roads in transporting logs in the Columbia river district to ascertain the board feet of logs hauled by making a "freight scale" of the same as distinguished from a "commercial scale." In the latter method of scaling, the object is to determine the board feet of merchantable lumber in a log, whereas in the "freight scale" there are a number of defects commonly found in logs for which the scaler makes no deduction. In other words, the so-called "freight scale" is a higher or fuller scale than that ordinarily used when logs are scaled to determine the rights of buyer and seller. It is clear from the record that the Spaulding rule may be applied to whatever method the scaler uses. The "Spaulding scale" or rule is merely a table to ascertain the number of board feet in a log after its diameter—measuring from inside the bark—and length are known. In actual practice, when logs are scaled the scaler merely submits his "field notes" giving the length and diameter of the logs after making certain deductions for defective portions, such as sap rot and hollow butts, and then, perhaps, some clerk in the office applies the Spaulding rule to the dimensions thus given in order to determine the board feet in the logs transported.

The court submitted to the jury the question as to what was the custom or usage in the Columbia river district relative to the method of scaling logs for freight charge purposes. A verdict and judgment was had for defendant. Plaintiff appeals.

 Since this cause must be remanded for a new trial because of error hereafter considered, it is deemed advisable to discuss somewhat the proper method of proving custom or usage. In the instant case, the court properly placed upon the railroad company the bur-

den of proving usage. Reasonable doubts relative to tariff rates are resolved in favor of the shipper: *Northern Pacific Ry. Co. v. Sauk River L. Co.*, 160 Wash. 691 (295 P. 926). It was not proper, however, on direct examination to prove custom or usage by reference to particular instances wherein carriers followed certain methods of scaling logs for the purpose of determining freight charges. On direct examination, the witness, after being qualified, should have been asked in substance whether he knew of any general custom or usage in the Columbia river district during the time in question, relative to the method of scaling logs for freight charge purposes. If the witness answered in the affirmative, he should state, as a matter of fact and not of opinion, what was the custom. As stated in *Central Radiator Co. v. Niagara Fire Ins. Co.*, 109 N. J. Law 48 (160 Atl. 342):

"If a trade or business custom is to be proved, the first thing to prove is that it exists, i. e., that there is a custom; and, if there is one, then what it is."

On cross-examination, it would of course be proper to inquire of the witness concerning particular instances wherein certain methods of scaling had been used. The method of proving custom is analogous to that of proving reputation: *Conner v. Citizens' Street R. R. Co.*, 146 Ind. 430 (45 N. E. 662); 29 Am. & Eng. Ency. Law (2d Ed.) 410. Custom or usage is a matter of fact and not of opinion. See Lawson Usages and Customs, § 55. Any witness, though not an expert in the particular business, is competent to testify to usage if he knows the usage. Abbott's Proof of Facts, 999. Counsel for defendant endeavored to prove usage in accordance with the rules above stated, but could not do so on account of objections of the plaintiff being sustained.

██ In our opinion it was error to admit in evidence the testimony of witnesses and excerpts from records relative to a proceeding had before the Public Service Commission of Oregon in 1918 wherein the defendant railroad company had made application to increase its freight rate for the transportation of logs. Several logging operators appeared in opposition to the petition of the railroad, but the plaintiff was not a party to such proceeding—in fact, it was before the plaintiff commenced logging operations. At this hearing—which was several years before the shipments in question—there was no issue concerning the customary method of scaling logs for freight purposes. It was error to admit the transcript of evidence in the Public Service Commission hearing for the purpose of proving a custom or usage. It was also error to permit Mr. Kerry, executive officer of the defendant railroad, to read excerpts of his testimony given before the Public Service Commission. Plaintiff made no appearance at such hearing and had no opportunity to cross-examine the witness. The record discloses the following statement of counsel for defendant, made after counsel for plaintiff had renewed his objections to evidence of the hearing before the commission:

"As far as this is concerned this is not one of the direct issues in this case, I have a transcript of the testimony here that I can introduce if counsel wants to see it. As I say this is not one of the direct issues of the case; this is a matter simply for the jury to pass upon they are the ones to pass upon the credibility of this. My question is as to whether or not that matter was brought before the Public Service Commission."

Whereupon the court stated: "I think I will overrule that objection. If counsel is willing to submit it to the jury from the records that would obviate your

question." In referring to this line of testimony, the court thus instructed the jury:

"* * * this allegation in the answer there (referring to Public Service Commission hearing) is not for the purpose of your considering that the Public Service Commission had determined this question for you but only for the purpose of your receiving evidence as to the character of testimony and evidence submitted to the Public Service Commission at that hearing for what bearing that might have upon the question of determining the defendant's interpretation of this tariff was in accordance with the general customs existing at that time."

If some witness had testified before the Public Service Commission relative to custom or usage in scaling logs and such testimony was contrary to that given in the instant case, the record in the rate case might be used for impeachment purposes, but clearly it was not proper for the defendant thus to prove custom or usage over the repeated objections of the plaintiff. We conclude that this error warrants a reversal.

■ The instructions of the trial court in their entirety were clear and explicit. We see no objection to the following instruction upon which error is predicated:

"On the question of custom, I instruct you that before the custom alleged in defendant's answer can be binding on plaintiff, you must find by the preponderance of the evidence that the alleged custom was definite, uniform and long established. Accordingly, if you find from the evidence that any railroad operating in the locality during the time involved and having a tariff of the nature herein involved, did not follow the custom and practice alleged by the defendant, you should find that the alleged custom did not exist, and upon this issue your finding should be for the plaintiff, but I want to caution you that one violation does not necessarily disprove the existence of a custom. If,

therefore, you find that defendant or some other carrier, may have carried logs belonging to itself or to a particular concern which owned the railroad or owned a controlling interest in the railroad on a different basis from that applied by it to shippers in general it would be for you to determine whether such conduct constituted merely a violation of an existing custom or evidence of the non-existence of the custom.''

■ At the close of the charge, counsel for plaintiff, upon request, was granted ''twenty-four hours' time to except to instructions.'' Being unable to discover anything wrong with the instructions within the time allotted, counsel again, upon request, was granted several days' additional time in which to take exceptions. Section 2-701, Oregon Code 1930, thus defines an exception:

''An exception is an objection taken at the trial to a decision upon matter of law, whether such trial be by jury or court, and whether the decision be made during the formation of a jury, or in the admission of evidence, or in the charge to the jury, or at any other time from the calling of the action for trial to the rendering of the verdict or decision; * * *.''

The object of requiring an exception to be taken at the time of trial is to enable the court to correct any error which may have been committed. The above practice is not fair to the trial court and is not considered in keeping with the proper administration of justice. We think this court would be warranted in refusing to consider an exception thus taken.

■ Evidence that a certain course is generally and usually pursued in a particular manner is sufficient to establish a custom. It is not essential to show that there has been no deviation from such particular manner. It is sufficient if a custom be so general and uni-

form that it may be said to have become a part of the contract of shipment: *Glantz v. C. B. & Q. R. Co.,* 90 Neb. 606 (134 N. W. 242) ; *Champion v. Wilson & Company,* 64 Ga. 184; *Desha Smith & Co. v. Holland,* 12 Ala. 517 (46 Am. Dec. 261). When the plaintiff introduced testimony showing that the defendant railroad had based its freight charge in certain particular instances according to the "commercial scale" it was proper for the carrier to show the circumstances under which such shipments were made and the relationship of the shipper and carrier. True, the defendant common carrier had no legal right to discriminate between shippers, if, indeed, it did so discriminate, but we are not concerned with an action to recover damages by reason of an unlawful discrimination. This action is based on overcharges.

There was no error in rejecting offer by plaintiff of a contract between the Kerry Timber Company and the defendant. This contract pertained to the sale of timber. When logs are scaled to determine the rights of buyer and seller, or in accordance with the "commercial scale" we cannot see in what way such transaction would throw any light on the issue involved in this case.

The judgment is reversed and the cause remanded for a new trial.

BEAN, C. J., ROSSMAN and CAMPBELL, JJ., concur.