Argued March 14; affirmed March 27, 1934

# GREEN MOUNTAIN LOG COMPANY *v.*
# COLUMBIA & NEHALEM RIVER RAILROAD

(30 P. (2d) 1047)

*Hugh Montgomery,* of San Francisco, Cal. (Albert B. Ridgway, of Portland, on the brief), for appellant.

*Harry B. Beckett,* of Portland (Wilbur, Beckett, Howell & Oppenheimer and R. K. Powell, all of Portland, on the brief), for respondent.

BEAN, J. The case was once before appealed to this court and reported in 141 Or. 188 (16 P. (2d) 1106) where a detailed statement of the facts and issues is found. The decision of a question on a former appeal is the law of the case on a subsequent appeal in the same case: *Powell v. D. S. & G. R. R. Co.,* 14 Or. 22 (12 P. 83); *William Hanley Co. v.*

*Combs,* 60 Or. 609 (119 P. 333); *Douglas v. Rumelin,* 130 Or. 375 (280 P. 329).

Shipments of logs were made by plaintiff between February 28, 1924, and June 1, 1925, and moved under tariff rate published by the defendant railroad, requiring the shipper to pay $3.25 per thousand feet of logs transported "based on Spaulding scale".

Plaintiff contends that the railroad company erroneously applied the tariff rate for these shipments and seeks to recover the difference between what it paid and what the charge should have been under the proper interpretation of the rate as published. The controversy pertains to the measurement of the logs and application of the Spaulding scale. The plaintiff alleges that an improper measurement was made, contrary to the correct interpretation of the tariff provisions which defendant filed with the public service commissioner; that the bills rendered should have been computed by using the Spaulding scale as a base in accordance with the definite and long established usage in Columbia county, Oregon, well known to defendant, that is, with an allowance for hollow, rot, decay and other defective portions, so that the bills rendered would have been for the so-called "full" scale of cull logs in the raft and for the merchantable portions only of the merchantable logs in the raft.

The defendant denies the allegations of overcharges and alleges and asserts that under the tariff referred to in the plaintiff's complaint, filed with the public service commissioner of Oregon, during all the time plaintiff was shipping logs over defendant's railroad, it was the general custom and practice of the defendant and other railroads operating in western Oregon and the lower Columbia river district in Oregon to base its

and their tariff charges on logs at so much per thousand feet of logs transported, that is, with a deduction for "hollow butts" and "rotten sap", according to the "freight scale", and that the charges made by defendant and paid by plaintiff were based upon said freight scale; that such general custom and practice of the defendant and other railroads was at all times well known to the plaintiff; that all of plaintiff's logs were fairly and correctly scaled by defendant in the usual and customary manner for the ascertainment of the proper amount of freight to be charged the plaintiff therefor.

There are 158 causes of action stated in plaintiff's complaint, each constituting a separate shipment. Plaintiff claims overcharges amounting in the aggregate to $19,000. It is agreed that if the logs were measured and the charges were based upon the Spaulding scale, applying the so-called "commercial scale", instead of in accordance with the "freight scale" as applied by defendant, there would have been a difference and that the computation under the commercial scale would have amounted to the sum claimed by plaintiff. The gist of the stipulation is as follows:

"In other words, there is no disputing the allegation as to the figures; the dispute relates to whether or not the correct set of figures was used; that is the dispute relates to which set of figures should have been applied to the plaintiff's logs."

The manner of figuring the rates is set forth in plaintiff's complaint, as to one cause of action, and the figures are agreed to be correct.

■ The main issue raised in the case by the plaintiff's complaint and defendant's answer is, what was the prevailing custom or usage of measuring logs in the lower Columbia district at the time of the several ship-

ments made by plaintiff? The court, by appropriate instructions, submitted this question to the jury as to what was the custom or usage in the Columbia river district relative to the method of scaling logs for freight charge purposes. It was the function of the jury to say what custom prevailed at the time and place mentioned: 27 R. C. L. 196, § 41; 17 C. J. 525, § 94; *Green Mt. Log Co. v. Columbia & Nehalem River R. R.,* supra; *McCulsky v. Klosterman,* 20 Or. 108 (25 P. 366, 10 L. R. A. 785); *Coast Fir Lumber Co. v. Parker,* 106 Or. 641 (213 P. 617).

The court instructed the jury as follows:

"If you, the Jury, find from the evidence in this case that it was not the general custom in the locality in which the Defendant's railroad company operated to interpret the tariff provision involved herein as a so-called freight scale differing from a commercial or buyer's and seller's scale, then you are instructed that the finding must be for the Plaintiff upon this issue relating to custom."

The court, after stating the claims of the respective parties, informed the jury: "now which of those two types of measurements on logs was to be used is for you to determine each party asserts that it was the custom in the district involved to use the type of measurements which he is claiming should be used".

From plaintiff's requested instruction No. 5, it appears that such instruction is in harmony with plaintiff's theory of the case. We quote:

"These are the two interpretations of that expression 'Spaulding scale' which the parties are relying upon and it is for you ladies and gentlemen to determine what is the customary and general interpretation of that expression 'Spaulding scale', so far as it was applied to the shipping industry of logs on the lower

Columbia River District at the time involved in this controversy.''

There was evidence adduced strongly tending to show that the prevailing custom or usage of measuring logs was according to the freight scale for the purpose of basing freight charges for transportation on the railroads in the district where the transactions occurred. The Spaulding scale is a compilation or table of figures to apply to the measurement of logs, that is, the length and diameter inside the bark, if any, at the smaller end of the log, so as to ascertain the board feet content of the logs after the scale is made. The jury found, in effect, that such custom or usage at said times and place in measuring logs was to apply the freight scale, which is sometimes called the ''full'' scale, apparently for the purpose of approximating the weight of the logs shipped for freight purposes.

In consonance with the former opinion in the case, the court placed upon the defendant railroad company the burden of proving the usage under which the charges were made and charged the jury that any reasonable doubt in regard to the tariff rates should be resolved in favor of the plaintiff shipper and against the defendant railroad company: *Green Mountain Log Co. v. Columbia & Nehalem River R. R. Co.*, supra; *Northern Pac. Ry. Co. v. Sauk River Lbr. Co.*, 160 Wash. 691 (295 P. 926).

On the proposition that the plaintiff was entitled to have reasonable doubts relative to the tariff resolved in its favor, the court instructed the jury as follows:

''You are instructed that if there is ambiguity in the tariff, it should be construed against the railroad company, but while doubts as to the meaning of a tariff must be resolved in favor of the shipper and against

the carrier which compiled it the doubt must be a reasonable one.''

■ Counsel for plaintiff on cross-examination of the witness R. A. Smith, who was called as an expert, directed attention to the published tariff of the defendant railroad company, particularly to the language: ''minimum six thousand board feet based on Spaulding scale'', and asked if with that language alone in front of a person they could determine just exactly what it meant. Defendant objected, as calling for a conclusion of the witness, and the court sustained the objection, for the reason that it is alleged in the complaint that the bill rendered should have been computed by using the Spaulding scale as the base ''in accordance with a definite and long established usage in Columbia county''. Plaintiff then moved the court to change the language of the complaint in this respect, ''in accordance with a definite and long established practice'', thereby substituting the word ''practice'' for ''usage'' in order to show the theory of plaintiff's case. The court denied the request for the reason that the change would be inconsistent with and contrary to the original complaint and a departure, whereupon counsel asked for a continuance of the case, which the court refused. The trial court said: ''I cannot see any difference between the usage that was well known and well established in the county and a custom that prevailed in the county, the language means the same to me''. Afterwards the plaintiff was permitted to inquire of Mr. Southerland, who was familiar with scaling logs, as to the meaning of the words ''so many feet based on Spaulding scale''. He explained that the Spaulding scale is just a computation for use after taking the measurements of the logs and to be used

for both the freight scale and the commercial scale. We think there was no error in the ruling upon the testimony. The matter of the amendment of the complaint rested in the sound discretion of the trial court. There was no abuse of that discretion. An opinion was rendered upon the former appeal on December 20, 1932, in which it was stated: "The controversy hinges on what is the customary and usual method of scaling logs for freight charge purposes." The suggested change, although a slight one, was tardy. Apparently it was in aid of an attempt to change the theory of the case from that indicated by the complaint. From the whole tenor of the allegations of the complaint it seems to us that the plaintiff relied upon established usage or custom as to measuring its logs according to the commercial scale. Plaintiff's theory of the case was not changed by any ruling of the trial court. We think the proper issue was tried and submitted to the jury.

■ Error is predicated on the admission of testimony on the part of the defendant, indicating that at the request of an officer of the plaintiff there had been a rescale of 23 separate rafts of plaintiff's logs for freight purposes, in accordance with the freight scale made by the scalers of the Columbia River Log Scaling and Grading Bureau. This rescale was certified and a copy mailed to the plaintiff, to which it is claimed no objection was made. Defendant having alleged that the logs were fairly and properly scaled, upon the plaintiff's questioning the accuracy of the freight scale made by the railroad company's scaler, and acquiescence in such request and a careful rescale being made, would tend to establish the correctness of the scale. While the matter is not of the utmost importance, we think it came in as a proper description of part of the trans-

action and tended to show that plaintiff was aware that the railroad company's tariff contemplated the making of a freight scale: See *O.-W. R. & N. Co. v. Cascade C. Co.,* 101 Or. 582, 590 (197 P. 1085, 200 P. 1034); *Zoller Hop Co. v. Southern Pac. Co.,* 72 Or. 262, 272 (143 P. 931).

██ Error is assigned in allowing the witness Baker to testify that when the Green Mountain Log Company went into possession of the property in question, Baker, who was one of the original organizers of that company, figured on paying the freight scale. The testimony tended to show that it was the custom and usage of logging railroads to make a freight scale of logs for freight charge purposes. It may have been a kind of backhanded way of showing this, but it had a bearing on the knowledge of the plaintiff company in regard to the custom of measuring the logs and we see no error in admitting the testimony. The objection is based largely upon the fact that the company at that time did not know that Kerry Timber Company's logs were being scaled on a basis different from that of other shippers. We fail to see that that affects the issues in this case. It would relate more particularly to an action for damages for discrimination. It was explained by Mr. Kerry that while the logs of the Kerry Timber Company were scaled in a different manner, they installed a drag-saw at the landing and cut out the defective parts of the timber and placed them among the culls and paid the freight thereon, in his judgment they paid as much freight as though the logs had been scaled on the basis of a freight scale. The plaintiff having brought the matter to the attention of the court and jury, we think it was proper for the explanation to be made.

Plaintiff complains of allowing evidence as to whether other shippers on defendant's line, during the times mentioned in the complaint, asked for the net scale. Mr. Edy, witness for defendant, testified as follows:

"Q. Mr. Edy, during the time you were there did any of these shippers, Green Mountain Logging Company or any of the others ever ask that their freight rate be based on the net or commercial buyers and sellers scale?"

After objection he answered "No, sir". It appears that there were 11 shippers of logs over the defendant's railroad at the time mentioned, and the testimony tended to show that the custom of scaling the logs according to the freight scale prevailed and was generally known to the shippers over this railroad.

A railroad tariff is to be considered much the same as a statute or contract: *Pillsbury Flour Mills Co. v. Great Northern Ry. Co.*, 25 Fed. (2d) 66; *Great Northern Ry. Co. v. Merchants Elevator Co.*, 259 U. S. 285 (42 S. Ct. 477, 66 L. Ed. 943); *Updike Grain Co. v. Chicago & N. W. Ry. Co.*, 35 Fed. (2d) 486. Parol evidence is admissible and every fact is relevant which shows how the usage in particular instances was understood and acted upon by the parties then interested. Particular instances of the parties' previous course of dealing may be shown to establish knowledge of the usage: 17 C. J. 520, 521, § 87.

The testimony complained of tended to show that practical business men paid freight based upon the freight scale of their logs over this railroad without objection. The testimony indicated that there was a usage and practice in the district to make a freight scale. There was no error in admitting such evidence.

At plaintiff's request the court charged the jury relative to a practical construction of the tariff as follows:

"A tariff is similar to a statute or a contract, and if its meaning is ambiguous, resort may be had to the construction placed upon it by the individuals affected thereby, and so if you find that the tariff of the Defendant is ambiguous as to the method of its scaling logs for freight purposes, and if you further find the Plaintiff and the other shippers of logs on Defendant's line during 1924 and 1925 and for some time prior thereto, knowingly paid freight charges to the Defendant based upon the freight scale as heretobefore defined, and paid them without objection, accepting the railroad's interpretation of the tariff as being the proper one, then I instruct you that the so paying of the freight charges based upon the freight scale, constituted a practical construction of such tariff, and such construction may be considered by you as evidence indicating what was the customarily and generally accepted meaning of the ambiguous expression in the tariff."

█ Plaintiff complains because the court refused to allow it to prove by cross-examination of one of defendant's witnesses that in 1929 he had shipped logs over the road of the defendant and had paid on the commercial scale. The last of the shipments in controversy took place in 1925. The defendant sold its road to the K. P. Timber Company on September 11, 1925, and the custom or usage prevailing in 1929 was not germane to the issues in this case. There was no error in sustaining the objection to the inquiry: *Dieck v. Oconto Co.,* 173 Wis. 156 (180 N. W. 932, 935).

█ Error is predicated upon allowing the introduction by defendant of scale books where the amount of the scale had been stipulated. Plaintiff introduced one of these scale books as a part of its case in chief. Afterwards the court allowed plaintiff's motion to strike

the answer given by the witness to the question. Therefore the matter was withdrawn from the consideration of the jury. There was no prejudicial error in the ruling of the court.

 Plaintiff complains because the court refused to certify that the plaintiff took and was allowed an exception to the refusal of the court to give the plaintiff's requested instructions appearing in the transcript. The transcript does not show that an exception was taken by the plaintiff to any of the instructions which the court gave. It is silent as to any exception to the failure of the court to give any of plaintiff's requested instructions. The following appears from the transcript, after the court had charged the jury:

"Court: Is there any question in your minds as to any of these instructions. If not, you gentlemen may state whatever exceptions you have to these instructions.

Mr. Geary: Plaintiff has no exceptions Your Honor.

Mr. Beckett: The defendant has no exceptions."

It is stated that the transcript is not the best. It appears that the court gave several of plaintiff's requested instructions. The trial court refused to certify that appellant had taken any exception to the refusal of the court to give the plaintiff's requested instructions. There is no basis in the record for a review of the ruling of the court. No proceedings were taken under the provisions of section 2-702, Oregon Code 1930. The plaintiff claims a blanket exception to the failure to give its requested instructions, which we think is insufficient. The court's attention should have been specifically called to the particular instruction which the court had overlooked, in view of the fact that

the court gave several of plaintiff's requested instructions.

■ Plaintiff asserts that the court erred in allowing evidence of what timber the Green Mountain Log Company owned and the location of the Columbia & Nehalem River railroad. The plaintiff appears to have proceeded upon the theory that the timber, as well as the railroad, was all in Columbia county. It was shown at the trial that a large portion of the timber of the Green Mountain Log Company was located in Clatsop county; that the railroad extended over the line into both counties, and that Buster, the place from near where the timber was shipped, was in Clatsop county. The district where the timber was cut and transported was fully described, and plaintiff is not in a position to complain. The description of the railroad given upon the trial seems to have been accepted by both parties. We find no error in this respect.

After a careful reading of all the testimony and all the charge given by the learned trial judge to the jury, and a consideration of all the matters submitted, we find no error in the record. Judgment of the circuit court is therefore affirmed.

RAND, C. J., CAMPBELL and BELT, JJ., concur.