[No. 22552. *En Banc.* February 18, 1931.]

NORTHERN PACIFIC RAILWAY COMPANY, *Respondent*, v. SAUK RIVER LUMBER COMPANY *et al, Appellants.*[1]

[1]Reported in 295 Pac. 926.

*Cleland & Clifford,* for appellant Sauk River Lumber Company.

*The Attorney General* and *John C. Hurspool, Assistant,* for appellant Department of Public Works.

*L. B. da Ponte* and *Thos. H. Maguire,* for respondent.

*F. M. Dudley, amicus curiae.*

MAIN, J.—This is an appeal from a judgment of the superior court setting aside an order of the department of public works.

The facts essential to be stated are these: The Sauk River Lumber Company is a corporation, engaged in the logging business, and will be referred to herein as the logging company. The Puget Sound Scaling and Grading Bureau is engaged in the business of scaling logs for its members and others, and will be referred to as the scaling bureau. During the year 1926, the logging company was logging near the town of Darrington in Snohomish county. One of the Northern Pacific Railway Company's lines extends from Darrington to the city of Everett. After the logs were cut, they were placed upon cars furnished by the railroad company, and transported to Everett. When they reached the yard in Everett, they were scaled by the railroad company's scalers, after which they were dumped into the boom, where they were scaled by the scaling bureau.

The shipment of the logs moved under what is referred to as tariff No. 51, which was filed with the department of public works by the Chicago, Milwaukee & St. Paul Railway Company, the Great Northern Railway Company, the Oregon-Washington Railroad & Navigation Company, and the Northern Pacific Railway Company, and which became effective October 1, 1925. This tariff provides for "rates in cents per

thousand feet," and the rate therein stated from Darrington to Everett is $2.50 per thousand feet. There is a provision in the tariff that the minimum load is "six thousand feet board measure for each car used." The tariff in no place defines what is meant by "board measure."

During the year 1926, the logging company shipped logs, for which it paid the railroad company freight in the sum of $188,784.55. Believing that it had been overcharged, it filed an application with the department of public works for a refund. Upon the hearing, the department found that all payments in excess of $179,501.92 were excessive, making the overcharge $9,282.63.

The difference arises by reason of the different methods of scaling. The scaling bureau used what is called the Scribner Decimal C rule, with proper deductions. The railroad company's scalers used Scribner's Decimal C rule, with deductions in accordance with rules and regulations adopted by that company many years ago. The rules and regulations of the railroad company never became a part of tariff No. 51, and were not communicated to the logging company. The scaling bureau scaled from eighty to eighty-five per cent of the logs sold in Puget Sound waters during the year 1926, or approximately 1,800,000,000 feet. The scaling bureau's method is the one by which logs are bought and sold generally in the Puget Sound territory. The difference between the two methods of scaling is in the deductions, the railroad company's method allowing less deductions than that of the scaling bureau.

The tariff under which the logs moved not defining board measure, when the matter was presented it became primarily a question for the department of public works to determine. If the tariff, as filed, is

doubtful or ambiguous, any doubt should be resolved against the party causing such tariff to be put into effect. In *North Packing & Provision Co. v. Director General,* 104 I. C. C. 607, it is said:

"The failure of defendants to publish their rates and charges in clear and unmistakable terms, as required by the tariff rules, may not be used as a cloak to defeat the claims of shippers. In construing doubtful and ambiguous tariffs, the Commission has always resolved the doubt against the party responsible for having such tariffs in effect."

In interpreting a tariff, the terms used, when they are not defined therein, should be taken in the sense in which they are generally understood and accepted commercially. In *Armstrong Manufacturing Co. v. Aberdeen & Rockfish Railroad Co.,* 96 I. C. C. 595, it is said:

"While doubts as to the meaning of a tariff must be resolved in favor of the shipper and against the carrier which compiled it, the doubt must be a reasonable one. In interpreting a tariff the terms used must be taken in the sense in which they are generally understood and accepted commercially and neither carriers nor shippers can be permitted to urge for their own purposes a strained and unnatural construction."

Since tariff No. 51 does not define what is meant by board measure, and since the method of scaling adopted by the scaling bureau is the one recognized commercially, it cannot be said that the department acted arbitrarily or capriciously in the construction which it placed upon the tariff. It is said that this construction will result in discrimination, but we think just the opposite is the effect. The department having construed the tariff, it necessarily follows that it will be applicable to all shipments of logs. If it had adopted the railroad's method of scaling, that likewise would have become effective as to all shipments mov-

ing in this state. Inferentially, it appears that the other railroad companies which were parties to the tariff have carried logs for charges which were based upon the scale of the scaling bureau.

It is further said that the scaling bureau's method does not permit recovery for the entire mercantile content of the logs. No method of scaling can be mathematically correct and determine by the scale the exact amount of lumber that may be cut from a log. The fact that sellers and purchasers are willing to adopt the scale of the scaling bureau is a recognition that that scale is as nearly correct as can be made. Of course, it would be impractical to base a freight rate, and collect therefor, upon the basis of the actual cut at the mill from the logs.

It is also said that the scale of the bureau does not include logs broken in dumping, or logs which have been stolen, but there is no evidence in this case from which it can be found that any substantial quantity of the logs were broken in dumping, or that any of them had been stolen.

Upon the trial before the department, the railroad company sought to introduce evidence which would tend to show that the amount of lumber cut from logs would be greater than the scaling bureau's scale would indicate, and also that the method adopted by the bureau had a direct bearing upon the revenue of the railroad company, but this was rejected. It must be remembered that this is a proceeding to recover for an overcharge, and not a rate making proceeding. So far as this case is concerned, it must be determined by tariff No. 51, and the proper construction to put on what is meant by ''board measure,'' because that is the basis upon which the freight charge must be made. In this proceeding, the department did not err in re-

jecting the evidence offered, of which ruling complaint is made.

This case is entirely different from that of *State ex rel. Washington Mill Co. v. Great Northern R. Co.,* 43 Wash. 658, 86 Pac. 1056, 117 Am. St. 1084, 6 L. R. A. (N. S.) 908, where an act of the legislature arbitrarily fixed the weight of standards for lumber cars at one thousand pounds and required such weight to be deducted from the net weight of the lumber on all carloads received for shipment, regardless of the actual weight of such standards.

The briefs in this case have taken a somewhat wider range than this opinion would seem to indicate, but we have considered and determined what appears to us to be the controlling question, that is, whether the department adopted a wrong method for determining the amount of board feet in logs shipped. It would serve no useful purpose to give consideration to questions which are not necessarily here involved.

As to the amount of recovery, this is based upon the calculations of a rate and traffic expert, and it appears to us to be substantially accurate.

The judgment appealed from will be reversed and the cause remanded, with direction to the superior court to enter a judgment sustaining the order of the department of public works.

TOLMAN, C. J., MITCHELL, BEALS, MILLARD, and BEELER, JJ., concur.

HOLCOMB and PARKER, JJ., dissent.