### RAYMOND CITY COAL & TRANSPORTATION CORPORATION v. NEW YORK CENT. R. CO.

#### No. 7697.

Circuit Court of Appeals, Sixth Circuit.

April 6, 1939.

Charles P. Taft, of Cincinnati, Ohio (Charles P. Taft and Taft, Stettinius & Hollister, all of Cincinnati, Ohio, on the brief), for appellant.

J. L. Kohl, of Cincinnati, Ohio (S. W. Baxter, C. P. Stewart, J. L. Kohl, and Harmon, Colston, Goldsmith & Hoadly, all of Cincinnati, Ohio, on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is an appeal arising out of a suit by the New York Central Railroad Company, appellee, to recover demurrage on cars detained at North Bend, Ohio, by the appellant, Raymond City Coal & Transportation Corporation, which operates coal mines near Raymond City, West Virginia. The greater part of the output is conveyed over appellant's tracks, elevated into a tipple and from there loaded into appellant's barges and conveyed on the Kanawha and Ohio Rivers to North Bend, Ohio, a distance of 256 miles, where it is elevated from the barges to another of appellant's tipples, from which it is loaded into railroad cars furnished by the appellee and transported in interstate commerce.

Appellee furnished its cars at North Bend pursuant to demurrage rules contained in American Railway Association's Tariff Bureau Freight No. 4-O and 4-P. Rules 1-A to and including 7-A provide for a demurrage charge after forty-eight hours' free time, $2 per day for each car for the first four days and thereafter $5 per day. Under Section B-3 of the same rules, empty cars placed for loading coal at coal mines or mine sidings are exempt. In the footnote to this section a mine track or mine siding is defined as one owned or leased by the mine or which is used exclusively for traffic at the mine and a part of the mine lay-out constructed or operated by the mine company or carrier to serve the mine or mines in question, which can be reached from it without switching over tracks that are not mine tracks, the tracks of carriers being considered part of the mine lay-out in the usual switching operations at the mines.

Appellee sued appellant for $443 demurrage at North Bend, Ohio, for violation of the above rules. Appellant answered and claimed exemption under rule B-3, supra. The lower court held the answer insufficient and awarded appellee judgment.

The question at issue involves the true application of the exemption rule. Appellant contends that its tracks, tipple and loading docks at Raymond City, West Virginia, and its tracks, tipple and loading machinery at North Bend, Ohio, come within "the mine lay-out" exemption and that the distance which the coal moves from the time it leaves the mine shaft until loaded into appellee's cars is unimportant, because a movement in interstate commerce does not begin until the coal is loaded into appellee's cars at North Bend.

Tariff schedules are to be construed as a whole including footnotes according to their sense and meaning as collected in the first place from the terms used which are to be understood in their plain, ordinary and popular sense unless, by the known usage of trade, they have acquired a peculiar meaning distinct from the popular one or unless the context points out they must be understood in some special and peculiar sense. If doubtful in meaning the construction will be applied that is most favorable to the shipper.

It is the duty of the court to give effect to the purpose of the rule and to apply it in reference to the particular business which it influences or controls. The general practice throughout the country has been to relieve from demurrage penalties, cars for coal loading or cars under load at mines where car distribution rules are applied. The distribution rules more effectively prevent the use of the carriers' equipment by shippers for storage purposes than demurrage. Demurrage on Coal and Coke at Points on Tennessee Railroad, 102 I.C.C.R. 554.

Note 1 in the Tariff under consideration provides that the "mine track or mine siding * * * is one devoted exclusively to traffic at the mine * * *" and "a part of the mine lay-out. * * *"

A rational interpretation of these phrases admits of but one construction. As ordinarily understood a "mine lay-out" of tracks so far as the loading of coal is concerned refers to the switching facilities for moving cars to and from the mine tipple with such adjacent track storage space at the mine as has been provided. When appellant's coal left its adjacent mine tracks and moved on appellant's cars to Raymond City, West Virginia, and later into its barges, it had left the mine lay-out and entered appellant's transportation lay-out.

The fact is immaterial that appellant's coal did not become a part of interstate commerce subject to regulation by the Interstate Commerce Commission until it reached the tracks of appellee. The case of Pennsylvania Railroad Company v. Public Utilities Commission of Ohio, 298 U.S. 170, 177, 56 S.Ct. 687, 80 L.Ed. 1130, has no application. Compare Main Island Creek

Coal Company v. Chesapeake & O. Railway Company, 6 Cir., 23 F.2d 248.

The judgment is affirmed.