## ATCHISON, T. & S. F. RY. CO. v. GUTHRIE COTTON OIL CO.

### No. 2742.

Circuit Court of Appeals, Tenth Circuit.

Nov. 29, 1943.

Rehearing Denied Jan. 3, 1944.

Charles J. Kelly, of Denver, Colo. (Rainey, Flynn, & Green, of Oklahoma City, Okl., on the brief), for appellant.

Frank A. Leffingwell, of Dallas, Tex. (Ralph W. Currie, of Dallas, Tex., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The question presented by this appeal involves the construction of a rate schedule. Appellee, Guthrie Cotton Oil Company, ordered cars of thirty-six feet and forty feet, six inches in length, in which to ship bales of cotton linters. The railroad company furnished fifty feet cars. Appellee loaded more linters into the cars furnished than could have been loaded into the cars ordered, but did not fill the cars to full capacity. Freight charges were assessed and paid on the basis of the rates and amounts applicable to cars thirty-six feet and forty feet, six inches in length, respectively. The railroad company claims the right to recover freight charges based on the minimum weight of the larger cars used rather than upon the rates applicable to the cars ordered.

Section 3(a) of Rule 34 of Consolidated Freight Classification No. 13, which applies in such cases, provides as follows: "If carrier had been unable or finds that it will be unable within six days after receipt of order * * * to furnish closed car of length ordered and furnishes longer car, minimum weight shall be that fixed for car ordered except that when loading capacity of car is used, minimum weight shall be that fixed for car furnished."

The purpose of the schedule is quite obvious. It was to prevent the railroad company from furnishing a longer car than was needed, as evidenced by the order, and then charging the shipper the minimum weight of the larger car furnished, although his needs did not come up to that weight.

The precise language in the schedule to be construed is the phrase, "except that when loading capacity of car is used, * * *." What is meant by this language? The trial court in reaching its decision followed the decision of the District Court for the Northern District of Texas in Fort Worth & Denver C. R. Co. v. Childress Cotton Oil Co., 48 F.Supp. 937, 941. It was there held that the schedule in question did not require the shipper to pay on the basis of minimum weight of the larger car furnished even though he loaded more linters into that car than could have been loaded into the car ordered, so long as he did not fill the car to full capacity. In other words, both the court in the Fort Worth & Denver C. R. case and the trial court in this case construed the language to mean the same as though it read: "except that when the full loading capacity of the car is used * * *." With this construction we cannot agree.

The Fort Worth & Denver C. R. case recognized that there is a distinction be-

**11**

tween "loading capacity" and "full loading capacity." At page 940 of the opinion of 48 F.Supp., the court states: "Of course, in a sense, when you load anything in a car you use its loading capacity." "Capacity" means size, space, or compass. Reynolds v. General Electric Co., 9 Cir., 141 F. 551, 554. If one puts 5,000 bushels of wheat into a granary capable of holding 10,000 bushels, he certainly has used the capacity of the granary to one-half its full extent. It could not be said that he had not used the capacity of the granary because he had not completely filled it. What could be said is that he had not used all of the capacity of the granary.

We think the language should be given a reasonable construction and one relating to the subject matter at hand. What was the purpose of the rule? Obviously, the purpose was to prevent penalizing the shipper when he ordered a car sufficient for his needs, as evidenced by his order, and the railroad company furnished him one of greater capacity. The Interstate Commerce Commission had given its consideration to this matter. It had laid down its rules requiring the railroad company to adopt rate schedules which would eliminate this penalty against shippers. The Commission's interpretation is found in Rule 66(a) of Tariff Circular No. 20, in which it said: "The commission believes that when tariffs provide minimum weights which vary with the size or capacity of the car, it is the duty of the carrier to incorporate in such tariffs a rule to the effect that when a car of the dimensions or capacity ordered by the shipper can not be promptly furnished, and when the carrier for its own convenience does provide a car of greater dimensions or capacity than that ordered, such car may be used on the basis of the minimum carload fixed in the tariffs for cars of the dimensions or capacity ordered by the shipper, provided the shipment could have been loaded into or upon car of the capacity or size ordered; * * *".

It may be conceded that this rule is not a construction of the tariff involved here, but it is persuasive and enlightening in view of the ambiguous language of Rule 34.

It is argued that the construction adopted here penalizes the shipper if he inadvertently places one more bale in the car furnished than could have been contained in the car ordered by him. It can be ar-gued with equal force that a contrary construction enables him to fill a car of twice the capacity to its fullest extent, eliminating therefrom only a single bale from the very topmost part, and thereby reap a great benefit. We do not feel that the Interstate Commerce Commission, in requiring railroad companies to adopt rate schedules on this matter, intended to accomplish either of such results. Rather, it sought to bring about a condition that was fair to both the shipper and the company.

Obviously, there are three classes of capacity involved in a situation such as we have here: The capacity of the car ordered—the capacity of the car furnished—and the excess capacity of the car furnished over the capacity of the car ordered. If the shipper stays within the capacity of the car ordered, he should not, and cannot, under the Interstate Commerce Commission rule, or our construction of Rule 34, be penalized because the railroad company furnishes a larger car. But if a larger car is furnished than he said he needed when he placed his order and he uses the excess capacity beyond the maximum capacity of what he said he needed when he ordered his car, there is no reason why his rights and liabilities should not be determined by the car furnished. He has used the additional capacity when he exceeds the maximum amount that could be placed in the car ordered by him, and this is so whether he uses it all or only a part of it.

The decision of the trial court is reversed and the cause is remanded, with directions to proceed in accordance with the views expressed herein.

PHILLIPS, Circuit Judge (dissenting).

The Railway Company brought this action against the Cotton Oil Company to recover alleged unpaid freight charges arising out of the shipment in interstate commerce of nine cars of commodity known as cotton linters. In the trial below the Railway Company conceded it was not entitled to recover on one car and the Cotton Oil Company conceded liability as to one car. With respect to the remaining seven cars, the court found in favor of the Cotton Oil Company. The seven cars moved under uniform domestic bills of lading prescribed by the Interstate Commerce Commission. Such bills of lading bore notations that the Cotton Oil Company had ordered 36 feet and 40 feet 6 inch length

cars and that cars 50 feet in length were furnished for the carrier's convenience. The Cotton Oil Company did not load the cars furnished to their full capacity, but did load more bales of linters into the cars furnished than could have been loaded into cars of the length ordered. Freight charges were assessed and collected on the actual weight of the shipments. The question presented is whether the minimum weight fixed for the cars furnished should have been applied.

The applicable tariff is § 3(a) of Rule 34 of Consolidated Freight Classification No. 13, which reads as follows:

"If carrier has been unable or finds that it will be unable within six days after receipt of order * * * to furnish closed car of length ordered and furnishes longer car, minimum weight shall be that fixed for car ordered except that when loading capacity of car is used, minimum weight shall be that fixed for car furnished.

"If longer car than ordered is furnished and loading capacity of car furnished is not used, following notation must be made by agent on Bill of Lading and Waybill:

"'Car ——— ft. in length ordered by shipper on ——— (date); car ——— ft. in length furnished by carrier on ——— (date), under Rule 34 of Consolidated Classification.'"

The contention of the Railway Company is stated in its brief as follows:

"Plaintiff contends that the charges should have been computed, not upon the actual weight, but upon the minimum weight applicable to 50 foot cars. * * * This contention is based on plaintiff's assertion that the words 'loading capacity' as used in said Rule 34, Section 3(a) thereof, should be construed to mean that no more bales could be loaded into the cars furnished than could have been loaded into the cars ordered if freight rates applicable to cars of the length ordered are to apply."

Tariff Circular No. 20, Rule 66(a), is not a construction of a tariff. It is an expression of the Commission's view of what the tariff must provide in order to be reasonable.

Kaye & Carter Lumber Co. v. Minnesota & I. Ry. Co., 17 I.C.C. 209, and Walker v. Cleveland, C., C. & St. L. Ry. Co., 169 I.C.C. 458, did not involve the construction of tariffs. What the Commission held in those cases was that a tariff would be unreasonable which applied the minimum weight of the car furnished, rather than the minimum weight of the car ordered, if the shipment could have been loaded into the car ordered.

It seems clear to me that the meaning of the phrase "loading capacity of car" in the first paragraph of the tariff means the loading capacity of the car furnished. This is made abundantly clear by the second paragraph which provides "if longer car than ordered is furnished and loading capacity of car furnished is not used," notation shall be made by the agent on the bill of lading and waybill. Moreover, to construe the phrase "loading capacity of car" as referable to the car ordered would make the tariff unreasonable under the I.C.C. decisions above referred to, because so construed, if the car furnished was loaded to the capacity of the car ordered, the minimum weight of the car furnished would apply. Our inquiry then is, what is the meaning of the phrase "loading capacity of car furnished"?

Generally, non-technical words in a tariff should be given their ordinary signification or common meaning.[1] Since the tariff is written by the carrier, all ambiguities or reasonable doubts as to its meaning should be resolved against the carrier and in favor of the shipper.[2] The ordinary meaning of "capacity" is "extent of room or space; content, cubic; volume." Webster's New International Dictionary, 2d Ed., p. 396. Therefore, "loading capacity" must mean extent of room or space of the car furnished.

[1] American Railway Express Co. v. Price Bros., 5 Cir., 54 F.2d 67; Smokeless Fuel Co. v. Chesapeake & Ohio R. Co., 142 Va. 355, 128 S.E. 624, 629; Northern Pacific R. Co. v. Sauk River Lumber Co., 160 Wash. 691, 295 P. 926, 928; Raymond City Coal & T. Corp. v. New York Cent. R. Co., 6 Cir., 103 F.2d 56, 57; C. E. Luttrell & Co. v. Southern Railway Co., 193 S.C. 438, 8 S.E.2d 753, 755.

[2] Union Wire Rope Corp. v. Atchison, T. & S. F. Ry. Co., 8 Cir., 66 F.2d 965, 967; Raymond City Coal & T. Corp. v. New York Cent. R. Co., 6 Cir., 103 F.2d 56, 57; Atlantic Coast Line R. Co. v. Atlantic Bridge Co., 5 Cir., 57 F.2d 654, 655; Northern Pacific R. Co. v. Sauk River Lumber Co., 160 Wash. 691, 295 P. 926, 927; Smokeless Fuel Co. v. Chesapeake & Ohio R. Co., 142 Va. 355, 128 S.E. 624, 629.

There are practical reasons why the loading capacity of the car furnished should not be determined by reference to the loading capacity of the car ordered. When a car of a specified length is ordered and a car of greater length is furnished, the car ordered becomes a hypothetical car of unknown loading capacity, because railroad box cars of the same length vary as to height and width and, therefore, as to loading capacity. Hence, if a shipper ordered a car 36 feet in length and a longer car was furnished for the convenience of the carrier, there would be no way for the shipper to know the exact loading capacity of the car ordered. Therefore, if the construction, for which the Railway Company contends, is adopted, the shipper would be liable for the minimum weight of the car furnished, if he loaded one more bale in the car furnished than he could have loaded into the car ordered, although he would have no way of knowing the number of bales he could have loaded into the car ordered. Moreover, there would be no way of determining that the shipper had loaded more into the car furnished than could have been loaded into the car ordered, unless it be established that he loaded more into the car furnished than could have been loaded into the largest existing car of the length ordered. It seems to me these considerations must have activated the Railway Company in writing the tariff.

It is my view that the phrase "loading capacity of car" refers to the car furnished and means loaded to the extent of the room or space in that car.

For these reasons, I respectfully dissent.