**NATIONAL TRUCKING & STORAGE COMPANY, Inc., Appellant,**

v.

**The PENNSYLVANIA RAILROAD COMPANY, Appellee.**

**NATIONAL TRUCKING & STORAGE COMPANY, Inc., a Corporation, Appellant,**

v.

**The UNITED STATES of America, and The Pennsylvania Railroad Company, a Corporation, and The Interstate Commerce Commission, Appellees.**

**Nos. 11989, 12519.**

United States Court of Appeals District of Columbia Circuit.

Argued May 20, 1955.

Decided Sept. 29, 1955.

Mr. Malcolm D. Miller, Washington, D. C., for appellant in both cases.

Mr. William F. Zearfaus, Philadelphia, Pa., of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of Court, with whom Mr. Paul F. McArdle, Washington, D. C., was on the brief, for appellee Pennsylvania R. Co. in both cases.

Mr. C. H. Johns, Assistant General Counsel, Interstate Commerce Commission, with whom Mr. Edward M. Reidy, General Counsel, Interstate Commerce Commission, was on the brief, for appellee Interstate Commerce Commission in No. 12519.

Before FAHY, DANAHER and BASTIAN, Circuit Judges.

FAHY, Circuit Judge.

These two appeals were consolidated for hearing in this court. Although the litigation involved in No. 11989 was instituted earlier, our disposition of the cases makes consideration first of No. 12519 more logical.

I. In No. 12519 the National Trucking & Storage Company, Inc., appellant, usually referred to herein as the Trucking Company, filed suit in the District Court to set aside an order of the Interstate Commerce Commission.[1] The Commission's order had the effect of upholding demurrage charges against the Trucking Company made by the Pennsylvania Railroad Company, appellee, in the amount of $26,667.30, which charges the Trucking Company had attacked before

1. Sanction for this type of procedure is found in United States v. Interstate Commerce Commission, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451.

the Commission as unjust, unreasonable, and inapplicable, and thus in violation of Sections 1 and 6 of the Interstate Commerce Act, 49 U.S.C. §§ 1, 6 (1952), 49 U.S.C.A. §§ 1, 6. Proceedings before the Commission resulted in its Reports of July 7, 1948, 270 I.C.C. 539, of February 23, 1950, 277 I.C.C. 109, and of October 23, 1951, 283 I.C.C. 395, and in Commission orders of October 23, 1951, *id.* at 400, and of July 21, 1952. These Reports and orders were in evidence in the District Court. The court in its findings, however, stated that all the evidence before the Commission was not before the court. It therefore assumed that the Commission findings were sustained by the evidence, an assumption not contested on this appeal. The questions for decision were whether the findings supported the Commission's conclusions, or error of law appeared. Holding that the computation of demurrage made by the Commission accorded with the applicable tariff and was not invalid, the court dismissed the Trucking Company's complaint. We shall affirm.

The Trucking Company has a warehouse in the District of Columbia with a capacity of from 200 to 250 carloads of merchandise. Six cars may be unloaded onto or through the warehouse at the same time. The demurrage charges allegedly accrued on about 600 cars held by or for appellant from October, 1945 through February, 1946. The Trucking Company and Railroad had entered into a "car-demurrage average" agreement which provided *inter alia* for the earning by the former of credits on cars released by it before the expiration of the first twenty-four hours after placement, and for the incurring of debits against it on cars held for specified days beyond a two-day "free time" period. Additional charges accrued for cars held beyond the debit days. The charges in dispute involved principally cars on "constructive placement." A car is considered constructively placed when actual delivery to the consignee cannot be made "on account of the inability of the consignee to receive it." [2] Demurrage time runs on a car constructively placed just as if it had been actually placed.

The Trucking Company's principal contention is that the Commission utilized a legally invalid formula for computing certain deductions from the demurrage charges. These deductions were required by Rule 8–E–1 of the Railroad's published demurrage tariff. That Rule provides that demurrage charges shall be cancelled or refunded for any detention of cars proximately caused by a Railroad error which prevents proper tender or delivery, and that in such event "demurrage will be charged on the basis of the amount that would have accrued but for such error. * * * " The Commission found that the Railroad made errors within the meaning of the Rule in switchings and "run-arounds." A "run-around" is the placing of a recently arrived car ahead of one previously arrived. The Trucking Company does not complain of the allowances made for "run-arounds," but rather directs its attack at the method the Commission used in computing the deductions under Rule 8–E–1 for switching errors. The Commission considered a switching error to occur within the meaning of the Rule whenever the Railroad failed to fill completely the Trucking Company's siding by 8 a. m., the time of the Railroad's regular morning traffic check, unless the Railroad subsequently switched cars into the vacant spaces and the Trucking Company unloaded those cars that same day. Where such errors had occurred, the Commission's formula generally allowed the Trucking Company a credit of one day's demurrage time on the percentage of cars then under constructive placement equal to the percentage of unfilled space on the siding. Thus, for example, if a switching error occurred with reference to 2 of the 6 places on the siding, one day's demurrage time would be allowed on one-third of the cars being held under constructive placement. If 12 cars

2. Rule 5–A–1 of the Demurrage Tariff.

were being so held, 4 days' demurrage time would be credited to the Trucking Company. The Commission made certain adjustments in the allowances due under this formula before computing the final amount of demurrage. These adjustments were favorable to the Trucking Company.[3]

The basic thrust of the Trucking Company's argument is that its own method of calculating deductions due to switching errors should be substituted for that chosen by the Commission. The Trucking Company's formula, called the "funnel system," was rejected by the Commission as unreasonable. Under it the placement and release dates of all cars arriving after a switching error are revised, the new dates being chosen upon the assumption that there was no error, and that had the cars whose arrival dates are accelerated really arrived on those earlier dates, they would have been unloaded in the same amount of time as was actually later consumed in unloading them. This formula differs radically from that chosen by the Commission in that in effect it gives the Trucking Company an allowance on cars arriving subsequent to an error until no backlog of cars constructively placed remains, while the Commission's formula restricts the allowance to the cars held on constructive placement at the time of the error. Thus, for example, if 18 cars are held under constructive placement on a day when only 5 of the 6 unloading spaces are filled, if no cars arrive for another 3 days, and if on each of those 3 days the siding is completely filled and unloaded, either formula would give an allowance of 3 days. Under the "funnel system," the placement and release dates would be revised so that there would be only 17 cars constructively placed the first day instead of 18, 11 the next day instead of 12, and 5 the final day instead of 6, for a total of 3 days' credit. And under the Commission's system, one-sixth of 18 would equal 3 days' allowance. But if, in the same example, an additional 6 cars were to arrive the second day, the Trucking Company's system would produce an allowance of 4 days. One day's credit would be given each day until the backlog was eliminated, which would take 4 days. Thus, the theory would be that on the second day, had not the error occurred, 23 cars would be constructively placed instead of 24, etc. The Commission's formula, on the other hand, would not take into account the subsequently arrived cars, and hence would again allow only 3 days' credit. Since there were a great many subsequent arrivals after Railroad switching errors occurred, this difference between the two formulas resulted in a great disparity between the sum found due by the Commission and that admitted to be due by the Trucking Company.

The main attack levied by the appellant against the Commission's adoption of the modified percentage formula rests upon the contention that this formula is an erroneous interpretation of Rule 8–E–1. The Trucking Company contends that its formula reflects much more accurately the demurrage "which would have accrued but for" Railroad errors. To buttress this argument, the appellant refers to the principle that, in interpreting a tariff, doubts should be resolved in favor of the shipper. It cites United States v. Interstate Commerce Commission, 91 U.S.App.D.C. 178, 186, 198 F.2d 958, 966, certiorari denied 344 U.S. 893, 73 S.Ct. 212, 97 L.Ed. 691. See, also, Atlantic Coast Line R. Co. v. Atlantic Bridge Co., 5 Cir., 57 F.2d 654; Raymond City Coal & Transportation Corp. v. New York Cent. R. Co., 6 Cir., 103 F.2d 56. The Trucking Company also asserts that the percentage formula cannot be utilized consistently with Rule 5–A–1; but this contention simply presents the Rule 8–E–1 argument under a slightly different light. Rule 5–A–1 provides that cars may be constructively placed when they

3. For example, the final table of allowances did not follow the formula where fewer than six cars were constructively placed. This one day's credit was given when one space was unfilled and only one car was held under constructive placement.

cannot be delivered because of the inability of the consignee to receive them. The headnote to the Rule states that any time "for which the railroad is responsible" will not be charged against the consignee. The Trucking Company infers from this note that the consignee's inability to receive cars cannot give rise to constructive placements if that inability is due to the fault of the railroad. And the Trucking Company maintains that in this case the Railroad was at fault, since most of the cars which accumulated in the yards could have been accepted on time were it not for the switching errors of the Railroad. This is presumably demonstrated by the same revised placement and release times which are utilized in the "funnel system" of computing credits.[4] Thus, the Rule 8–E–1 argument uses the "funnel system" to cancel demurrage charges on cars constructively placed, while the Rule 5–A–1 argument attempts to use the "funnel system" data to prove that these cancelled demurrage charges should never have accrued in the first place.

Assuming that the Trucking Company's interpretation of Rule 5–A–1 is correct, still its argument, whether based upon that Rule or upon Rule 8–E–1, was not required to be accepted. The Commission found that both the Railroad and the Trucking Company were responsible for the accumulation of cars, stating:

"* * * (I)t does not appear from an analysis of the data of record that the failure of the defendant to keep all the unloading spaces filled was as potent a cause for the accumulation of cars awaiting unloading and the accrual of demur-

rage as the failure to release the cars as promptly as they were being received. * * *

"It is evident, however, that the failure of the defendant to keep the track filled at all times adversely affected, in some instances, the prompt release of the cars awaiting unloading and contributed to the accumulation of the backlog." (283 I.C.C. 395, 398.)

Thus the Commission was faced with the problem of assessing charges which would be just and reasonable under these circumstances of mutual fault. We think the formula adopted by the Commission is a reasonable solution to that problem. The Trucking Company formula rests upon assumptions which the Commission was at liberty to reject. In the first place, the appellant assumes a constant unloading time for each car, determined by the time actually consumed in unloading that particular car. It is obvious, however, that if the revised arrival date of a car with a one-day unloading time places that car on a day when only 2 cars were unloaded and 3 were left unloaded, the likelihood of that car being unloaded that same day is quite small. The Commission expressed the difficulty in these words:

"* * * The complainant's calculations are based on revised placement and release dates purportedly reflecting the dates such cars could have been placed and released had there been no run-arounds or switching failures on the part of the defendant. It is impossible to determine if the particular cars would have been placed and unloaded on the claimed dates in view of the

---

4. The Interstate Commerce Commission uses the *reductio ad absurdum* technique by construing appellant's argument to be that *no* cars could be constructively placed so long as there were any vacancies on the siding. Thus, though there were no previous switching errors, and though 15 cars waited placement, none could be constructively placed if there was one vacant space on appellant's siding. Such an argument would be errone-

ous, since it is clear that the inability to accept at least 14 cars would be attributable solely to the consignee. It is true that the appellant's argument is ambiguous, and might be susceptible of the interpretation the Commission seeks to place upon it. However, at least in the appellant's brief upon this appeal, the argument appears to take the more logical form outlined above.

congestion which clearly existed and of the fact that complainant did not always unload cars on the day on which they were placed." (283 I.C. C. 395, 396.)

It may be noted that the Railroad originally contended that no allowance should be given for switching error when any cars were left unloaded on the day of the error. The Commission gave the benefit of the doubt to the Trucking Company, however, upon the theory that it was possible that the particular car not actually placed because of the switching error would have been unloaded that day. But the Commission gave force to the uncertainty accompanying such speculation by restricting the effect of the allowance to the cars on constructive placement at the time of the error. The Trucking Company, on the other hand, would assume not only that a car with a one-day actual unloading time would be unloaded in that amount of time no matter what day it arrived, but in making demurrage allowance would give unlimited effect to the error which delayed the arrival of that particular car. The Commission could reasonably conclude that such a method of computation resolved so many doubts in favor of the Trucking Company as to be opposed even to the law of possibilities.

The Trucking Company also assumes that it had no duty to stop the flow of cars into the yard once the accumulation had begun. On the other hand, the Commission concluded that the Trucking Company did have such a responsibility. The Commission stated:

" * * * It would be unreasonable to require that an allowance be made on cars received after the respective dates of the failures on the part of defendant to fill all spaces on complainant's siding. Complainant knew, or should have known, that cars for its account were accumulating, and regardless of the cause of that accumulation, should have taken steps to prevent the shipment of cars which continued and increased that accumulation. We find that for each failure on the part of the defendant an allowance should have been made on all cars held under constructive placement on the day of the failure." (270 I.C.C. 539, 545.)

The appellant gives no reasons why it did not have such a duty, and the Commission's conclusion, reasonable on its face, must be accepted.

These various declarations by the Commission are tantamount to findings that the errors of the Railroad were not the "proximate cause" of demurrage accruing on cars subsequent to the error, in terms of Rule 8-E-1, and that such errors did not make the Railroad "responsible" for the inability of the Trucking Company to receive the cars when tendered, in terms of Rule 5-A-1. Rather, the Commission finds that the accumulation of cars should and could have been avoided by the Trucking Company. It is obvious that Rule 8-E-1 ordering computation of demurrage which would have been charged but for the Railroad error can be carried out only by estimate and approximation. No formula can reduce it to certainty. The determination of questions of "proximate cause" and "responsibility" under the Rules is one of fact, and under the standards governing our review of such determinations, see United States v. Interstate Commerce Commission, supra, we are impelled to affirm the administrative action, reached after most mature consideration of a question well within the area of administrative competence, and in proceedings free of legal error.

The appellant also argues that the Commission's method of applying Rule 8-E-1 to this factual situation is not contained in a published part of the Railroad's tariff and therefore violates Section 6 of the Interstate Commerce Act. Section 6 provides in subsection (1) that the tariff shall state "any rules or regulations which in anywise change, affect, or determine any part or the aggregate" of any rate, fare, or charge, and in subsection (7) that a railroad shall charge and a shipper shall pay the published tariff charges, no more and no less.

It is true that the Commission's formula might be considered a regulation or rule which affects the aggregate of a charge for a service and, therefore, that it should have been stated in the printed schedule of charges. But so to consider it in this case is not warranted. Rule 8–E–1 called for deductions in favor of the Trucking Company, because of Railroad error, of charges otherwise due. Appellant does not suggest that the charges themselves, except as required to be modified by the Rule, are not published, or that the Rule is not published. And we do not understand it contended before the Commission or in the court below that the unpublished interpretation rendered the basic charges themselves, or the Rule, invalid. We are not faced with those questions. Appellant's position comes to this, that notwithstanding the right of the Railroad to charge for demurrage under the published tariff, and the validity of Rule 8–E–1, the method used of arriving at deductions for failures attributable to the Railroad was unpublished, and therefore invalid. If invalid, then no method of computing deductions is available, for none was published. Appellant's formula cannot be accepted as a simple restatement of Rule 8–E–1, since it implicitly renders judgment on the questions of "proximate cause" and railroad "error." If both appellant's and Commission's methods of computation are invalid, then, it would seem to follow that deductions would be entirely unavailable. We need not meet that question, however, for, without passing upon the effect in other circumstances of the absence of publication of the formula used, we construe the action of the Commission in this case as a finding that the demurrage charges made by the Railroad were inapplicable, unjust, and unreasonable insofar as they included amounts which the Commission found should have been eliminated due to Railroad error, and as an implicit finding that the charges as modified in favor of appellant were reasonable under Section 1(5) and applicable under Section 6 of the Act. And as so construed, we affirm the judgment of the District Court dismissing the Trucking Company's complaint.

II. In No. 11989 the Railroad filed suit in the District Court against the Trucking Company for the amount claimed as demurrage. The Trucking Company not only denied that it owed the Railroad any demurrage beyond the sum of $90.64, but also counterclaimed for damages in the sum of $37,500, allegedly caused by the failure of the Railroad to comply with its agreement to place cars upon appellant's siding within a reasonable time and with reasonable diligence. This suit antedated the proceedings involved in No. 12519, which were initiated by the Trucking Company before the Commission. On the motion of the Trucking Company, the District Court held the Railroad's suit in abeyance pending a decision by the Commission. After the Commission's decision, but before dismissal of the complaint involved in No. 12519, the Railroad moved for summary judgment in its earlier suit. Summary judgment was granted in the sum of $24,145.05,[5] with interest from October 2, 1946,[6] at 6% per annum. The appeal in No. 11989 is from that judgment.

The appellant claims that a summary judgment should not have been granted upon its counterclaim for damages allegedly caused by unreasonable delay in delivering cars. It is not entirely clear

---

5. The difference between the amount of the judgment and that found due by the Commission is accounted for by the Railroad Company in its brief in this court as follows: "The Commission found that demurrage accrued in the amount of $26,-667.30. The federal tax thereon is $800.-02. The total of these two items is $27,-467.32. The Trucking Company contended that it was entitled to credits amount-

ing to $2,522.25. Deducting the last mentioned sum from $27,467.32 leaves a balance of $24,945.07. The court gave judgment in the amount of $24,145.05, which is $800.02 less than the net amount due. Evidently the tax item of $800.02 was overlooked."

6. October 2, 1946, is the date on which the Railroad filed its complaint in the District Court in No. 11989.

that the court intended the summary judgment to embrace the issues presented by the counterclaim. However, the motion for summary judgment and the order granting it are phrased in unqualified language, and so we infer that the court intended to dispose of the entire case. We agree with the Trucking Company that the summary judgment so construed goes too far.

■ Section 8 of the Interstate Commerce Act, 49 U.S.C. § 8 (1952), 49 U.S.C.A. § 8, imposes upon common carriers liability for damages resulting from violations of the Act. Section 9, 49 U.S.C.A. § 9, gives persons the right to sue either in federal district court or before the Commission "for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter". Finally, Section 16, 49 U.S.C.A. § 16, authorizes the Commission to order carriers to pay reparations for damages caused by violations of the Act. It is apparent from these provisions that the jurisdiction of the Commission to award·damages is confined to those cases in which the damages result from activity or nonactivity which can be classified as a violation of the Act. See Atlantic Coast Line R. Co. v. Riverside Mills, 219 U.S. 186, 207, 208, 31 S.Ct. 164, 170, 171, 55 L.Ed. 167, 182, 183; Galveston, H. & S. A. Ry. Co. v. Wallace, 223 U.S. 481, 32 S.Ct. 205, 56 L.Ed. 516; Louisville & N. R. Co. v. Ohio Valley Tie Co., 242 U.S. 288, 291, 37 S.Ct. 120, 122, 61 L.Ed. 305, 309. A long line of Commission decisions has established that unreasonable delay in transporting goods cannot be considered a violation of the Interstate· Commerce Act, and hence that a claim for damages based upon such delay cannot be adjudicated by the Commission. Aiello & Brother Corp. v. Delaware & Hudson R. R. Corp., 281 I.C.C. 733; T. A. Bryson & Sons v. Penn. R. Co., 253 I.C.C. 320; Lambertson Co. v. C. R. R. Co. of N. J., 100·I.C.C. 259; W. A. Patterson Company v. Pere Marquette Ry. Co., 87 I.C.C. 357; Blume & Co. v. Wells, Fargo & Co., 15 I.C.C. 53. See, also, Gustafson v. Michigan Cent. R. Co., 296 Ill. 41, 129 N.E. 516, certiorari denied 256 U.S. 698, 41 S.Ct. 538, 65 L.Ed. 1177; Peuchen v. Davis, 204 App.Div. 520, 198 N.Y.S. 518. The Trucking Company did not ask the Commission to compensate it for damages caused by Railroad delay, apparently relying upon these Commission decisions. We agree with the Commission's view of its own jurisdiction, and hence conclude that the Commission's order cannot be considered a determination of the issues involved in the Trucking Company's counterclaim in No. 11989. Under this view of the case, material issues of fact relating to the counterclaim remain unsettled, and therefore we reverse the summary judgment insofar as it purports to adjudicate the counterclaim. However, any attack upon the judgment's assessment of demurrage must fail, since our affirmance in No. 12519 upholds the validity of the demurrage charges claimed by the Railroad in No. 11989.

■ We set aside that part of the judgment in No. 11989 ·which includes interest prior to the date of the judgment. The only statute of possible application is § 28–2708, D.C.Code 1951, since § 28–2701 has to do only with the rate of interest if it is allowed, and § 28–2707 with interest on judgments for liquidated debts. Section 28–2708 permits interest to be allowed in an action to recover damages for breach of contract. It has been considered in varied circumstances. See Dyker Bldg. Co. v. United States, 86 U.S.App.D.C. 297, 182 F.2d 85; Flanaghan v. Charles H. Tompkins Co., 86 U.S.App.D.C. 307, 182 F.2d 92. It provides first that in such an action interest shall run only from the date of the judgment,[7] but adds that the court is not forbidden to include interest as an element in the damages awarded "if necessary to fully compensate the plaintiff." The District Court did not in terms find that interest was "necessary to fully compensate" the Railroad. Compare Dyk-

7. Judgment was filed in No. 11989 August 17, 1953.

er Bldg. Co. v. United States, supra. And the factual situation precludes us from construing the bare allowance as meeting this condition of the statute. This is especially so because the demurrage charges, as the Commission stated in its Report of July 7, 1948, "are substantially in excess of those ordinarily made * * * for such charges embody penalty assessments designed to expedite the release of cars during a period of car shortage," thus indicating that the Railroad would be more than fully compensated by less even than the demurrage charges themselves. The judgment accordingly will be modified by eliminating the provision for interest prior to the date of the judgment.

No. 12519 affirmed.

No. 11989 affirmed as modified with respect to interest, reversed and remanded with respect to the counterclaim, and otherwise affirmed.